## Charles C. Waldo v. James B. Simonson.

*Statute of frauds: Promise to pay the debt of another.* Where one claimed an interest in certain goods, and agreed not to attach them, in consideration that another claimant who proposed to attach, had agreed verbally to pay him the amount due from the person for whom the goods were bought:

*Held,* that this was an agreement to pay the debt of another, and therefore within the statute of frauds.

The supposed debt subsisted equally after the alleged promise as before. The promise was a mere additional assurance.

*Heard April 29.    Decided May 4.*

Error to Oakland Circuit.

This was an action brought to recover a certain sum of money alleged to have been promised to plaintiff by defendant. The plaintiff declared specially, and on the common counts.

On the trial, plaintiff testified "that in 1866, he and defendant were engaged in buying wool in Holly; that in July of that year a man calling himself Walker, came to Holly for the purpose of buying wool, and made arrangements with the defendants to purchase wool for him. While he was there he had a draft for $5,000, purporting to have been drawn by E. Wendell, on the First National

18 Mich.— x.

Bank of Detroit, to the order of Thomas McGraw & Co., which draft was indorsed by Thomas McGraw & Co.; that said Walker wished plaintiff to go to the bank in Holly, and help him get the money. Plaintiff went to the bank with said Walker, but they would not let Walker have money except on plaintiff's indorsement. Plaintiff then, at said Walker's request, indorsed said draft, in the bank, and they drew $900 on it.

That after this, and on the same day, witness aided Walker in buying wool with said money, and they bought about seven hundred pounds, at a cost of about fifty-eight cents per pound; and they paid for other lots, purchased by defendant, and the same was placed with the wool defendants had purchased for said Walker in their warehouse. On the day following it was discovered that the person calling himself Walker had run away, and Charles C. Waldo and the plaintiff went over to the bank and had a talk with the banker, Latourette, about it, and it was agreed, as between themselves, that they should have no law about it. Plaintiff and C. C. Waldo agreed with said Latourette that said draft need not be protested; they would pay it as soon as the wool was sold. Waldo then agreed to pay the plaintiff the amount of money that had been put into the wool, that came from the money got on the draft. Plaintiff had expected to attach the wool on his own account, but upon Waldo's making that agreement to pay him, he agreed not to do so, and they agreed between themselves that both their claims should be put together, and there should be but one attachment suit about it.

That the money referred to, was the amount of plaintiff's money that had gone into that wool: Money on account of the draft, $550.00. He assented to this, and rested easy until towards night. While at the bank Latourette, the banker, said the draft was a base forgery. Waldo

said to him, "you hold on to the draft a few days, till after the wool is sold, and we will come in and pay the draft." The draft was then in Latourette's hands. He said to his clerk, "lay it away. You need not protest it. These gentlemen will come in and pay it without expense."

After that, witness had a conversation with defendant, A. P. Waldo, and agreed that they would come to Pontiac to see about it and secure themselves. We agreed that we would have but one suit about it, if necessary to commence a suit. I went away for a short time, and when I returned I saw the Waldos, and they said they had attached the wool for both our claims.

Witness further testified: " Since that, I have had several conversations with them. A. P. Waldo told me he had sold the wool, and C. C. Waldo bought it at forty-eight cents. A. P. Waldo said it was right; I should have my pay; that his father had the wool, and ought to pay for it. He said he and his father were in partnership, and intended to divide the profits. Witness said he paid the $900 on the draft to Latourette, eleven days after he had indorsed it. Witness understood that, including this wool that his money paid for, there was purchased, in all, by the Waldos, on account of Walker, about 3,300 pounds; and that Walker had not furnished any of the money for the purchase. Witness said after the wool was sold, he had a conversation with C. C. Waldo, and made a proposition to him to settle up, and C. C. Waldo said he wanted to see A. P. Waldo, as he was equally interested, and he made an appointment to meet witness. Walker was subsequently arrested and his name proved to be Wolcott. · No writing passed between the parties relative to this matter.

The plaintiff also testified "that after the attachment, and before the sale, defendant, C. C. Waldo, come to plaintiff and told him he could get forty-eight cents per pound

for the wool, and asked him if he was willing to take that for his share, or interest, in the wool, and the plaintiff told him he was."

The defendants introduced testimony tending to contradict said agreement to pay plaintiff any part of the money received on sale of said wool.

On plaintiff's request, the court charged the jury:

1. That the agreement not to prosecute a claim when due, is a sufficient consideration for a promise.

2. If the defendants, in consideration that the plaintiff would omit to take legal proceedings on his own behalf, to secure the amount paid on the forged draft, or would omit to disturb them in the possession of the wool, if this was of benefit to said defendants, it is an original promise of the defendants, and not within the statute of frauds.

3. That a transfer of the claim of Simonson to defendants, of the amount of his claim against Walker, or Wolcott, equal to the money put in the wool by him, or from the draft, would be a good consideration for a promise, and a promise to pay that amount, based upon such considerations, would constitute an original undertaking, and is not a collateral promise.

After declining to charge certain requests of the defendant, the Circuit Judge further said that, if the jury should find, from the evidence, that the defendants promised to pay the said plaintiff the amount of money due from said Wolcott, which went into the wool, from that obtained at Latourette's bank, upon the promise made by said plaintiff to withhold legal proceedings for the enforcement of his claim against Wolcott, or not to attach the wool, then in defendant's possession, and that such withholding legal proceedings would be of benefit to said defendants; then the promise would not be within the statute, and need not

be in writing; but if the jury should find that the promise was a mere promise to pay the debt of Wolcott, without any consideration moving between the parties to this suit, of benefit or advantage to said defendants, then the contract would be within the statute, and void, unless in writing; and that the parol agreement not to attach said wool was a sufficient consideration for a promise.

The jury found a verdict for plaintiff.

*Baldwin & Look*, for plaintiff in error.

1. The assumed contract in this case, if any, was one to pay the debt of another. Simonson testified "that Waldo agreed to pay him the amount of money that had been put into the wool, that came from the money got on the draft."

This, in connection with all that was said, does not answer any of the requirements of the statute of frauds. — *2 Comp. Laws, 944.*

The testimony about his not commencing an attachment suit on account of it, amounted to nothing, as Waldo received no consideration from Simonson, and Simonson parted with nothing. He retained the draft in his own hands. He was the person liable, and there was no liability in any manner attaching to Waldo; and, at the time this conversation was had, Wolcott was not indebted to Simonson, and he (Simonson) had paid nothing on account of the draft. — *Brown v. Hazen, 11 Mich. 219.*

This case comes clearly within the statute of frauds. It was a parol promise to pay the debt of Wolcott. The statute was intended for some beneficial purpose, and if it can be varied and held for naught in this case, it would require but very little ingenuity to entirely nullify its provisions. — *2 Comp. Laws, 944; Mallory v. Gillett, 21 N. Y. 411; Brown v. Haven, 11 Mich. 219; Jackson v. Raynor, 12 Johns. 391; Simpson v. Patten, 4 Id. 422; Rogers*

v. Rogers, 6 Jones, N. C. 300; Westheimer v. Peacock, 2 Green, Iowa, 528; Hull v. Soule, 11 Mich. 494; Larson v. Wyman, 14 Wend. 246; Payne v. Baldwin, 14 Barb. 570; Eddy v. Roberts, 17 Ill. 505; Curtis v. Brown, 5 Cush. 491; Watson v. Randall, 20 Wend. 201; Nelson v. Boynton, 3 Met. 396; Stone v. Drinker, 2 E. D. Smith, 401; Bresler v. Pendel, 12 Mich. 224; 11 Id. 494.

The rule is well settled by the whole current of authorities, "that while the old debt remains, the new contract cannot be substituted, but is only a collateral one." And "if the liability of the original debtor continue, the promise of another to pay his debt, should be in writing." — Shoemaker v. King, 40 Penn. St. 107; Rogers v. Brooks, 6 Jones, N. C. Law, 303; Westheimer v. Peacock, 2 Greene, Iowa, 521; Curtis v. Brown, 5 Cush. 492; Kingsley v. Balcome, 5 Barb. 139; Brady v. Sackrider, 4 Sandf. Law, 515; State B'nk. v. Mettle, 2 Bosw. 396; Farley v. Cleveland, 4 Cow. 432; Barker v. Bucklin, 2 Denio, 57.

Each of the foregoing cases recognize the doctrine of the extinguishment of the original debt. Such is the rule, and Simonson, in this case, after the pretended promise, attached property of Wolcott's, and took judgment for his whole claim.

2. The court erred in charging the jury as requested by the attorney for Simonson, "that the agreement not to prosecute a claim when due is sufficient consideration for a promise." This was an abstract proposition of law not warranted by the case, and tended to mislead the jury.

The court also erred in charging the jury, "that if they shall find from the evidence that the defendants promised to pay the plaintiffs the amount of money due from said Wolcott, which went into the wool from that obtained from Latourette's bank, upon the promises made by said plaintiff to withhold legal proceedings for the enforcement of his claim against Wolcott, or not to attach the wool then in defendant's possession, and that such withholding legal pro-

ceedings would be a benefit to said defendant, the promises need not be in writing." In the foregoing proposition it is nothing but an undertaking for the debt of another, for the debt still subsists.

The court also erred in charging the jury, "that the parol agreement not to attach was a sufficient consideration for a promise.

*M. E. Crofoot* and *M. S. Brewer,* for defendant in error.

The case at bar is an original contract between the parties, and not collateral; and it is based on a ʾsufficient consideration passing between the parties in this case, which was that said plaintiffs in error would pay to said defendant, Simonson, the above sum of five hundred and fifty dollars and fifty cents ( the amount of money procured from Latourette, which went into the wool) in case Simonson would not attach or disturb the possession of the wool, but would let it remain and be sold together by said plaintiffs in error, which agreement was fully performed by said Simonson, on his part. — *2 Pars. on Cont. 305; Farley v. Cleveland, 4 Cow. 432; Myers v. Morse, 16 Johns. 424; Meech v. Smith, 7 Wend. 315; Brown v. Comstock and note, 2 Coms. 225; Nelson v. Boyington, 3 Met. 396; 8 Mich. 51; 12 Id. 10; 16 Id. 478; 21 N. Y. 412; 6 Yerg. 508.*

2. The agreement on the part of said plaintiffs in error was not made for the purpose of benefitting, in any manner, Wolcott (or Walker), but solely for their own interest.

3. Plaintiffs in error proceeded to perform the conditions of the agreement on their part, and went so far as to attach the whole amount of their part, and, in such attachment suit, added to their own claim against Wolcott ( or Walker ) the sum of five hundred and fifty dollars and fifty cents of the claim which Simonson held against Wolcott, and took judgment for the whole amount.

4. There was proof tending to show that only one suit was to be commenced against Wolcott, to secure the claim

of the plaintiffs in error, and five hundred and fifty dollars and fifty cents of the claim of defendant in error; that, in accordance with said agreement, said Aaron P. Waldo commenced said suit against Wolcott, and recovered judgment for the whole amount of their own claim, and the amount above mentioned of Simonson's claim, with the consent of Simonson — Simonson thereby virtually assigning to said Waldos that amount of his claim against Wolcott, for which they (Waldos) were to pay Simonson, when the wool was sold, $550.50; and they would be equitably bound at least to account to him in proportion to the amount which they succeeded in collecting on their judgment, and this seems to have been the view taken by the jury in the court below.

2. It is insisted by the plaintiffs in error, that Simonson cannot recover, for the reason that the full amount of his original claim against Wolcott (or Walker) still existed. This, perhaps, might be so had the original indebtedness of Wolcott to Simonson been the inducement or consideration for said plaintiffs' promise; but where the promise of the newly contracting parties is based or founded on a new consideration, which moves to the promiser, defendant in error is entitled to recover, although the original debt remains. — *Mallory v. Gillett, 21 N. Y. 422, 434; Farley v. Cleveland, 4 Cow. 432.*

3. The proof shows that, as soon as the defendant in error learned that the draft was a forgery, he immediately went to the bank and requested Latourette not to have the draft protested; that he would pay the money in a few days; to which Latourette assented, and, relying on said promise, he did not protest the draft, and Simonson paid the money to him, according to his agreement. If this be so, then Latourette, by entering into such verbal contract with Simonson, released Wolcott, and relied wholly upon

Simonson's promise, and Simonson had an immediate claim against Wolcott — as much so, as if he had paid Latourette the nine hundred dollars at the time he made the promise.

4. An agreement with defendants to forbear suit against Wolcott, was a good consideration for the promise of the plaintiffs in error to pay the five hundred and fifty dollars and fifty cents.—*Rood v. Jones, 1 Douglas, Mich. 188; Chitty Cont. 35; 1 Pars. on Cont. 367.*

GRAVES J.

Assuming that the defendant in error was damnified by forbearing to attach the wool, and that the promise to pay him, imputed to plaintiff in error, was, upon sufficient consideration—a view which is essential to the theory of the former—still that promise was, on such theory, one to pay Wolcott's debt, and within the statute.

According to the construction put upon the transaction by the defendant in error, Wolcott was indebted to him in so much of the proceeds of the endorsement of the forged draft as went into the wool, and it was this debt which the plaintiff in error undertook to pay. Admitting that it is shown by the circumstances that such debt was created, and the defendant in error was legally entitled, before the promise, to seize the wool by attachment against Wolcott for the debt, nevertheless the supposed debt subsisted in as ample a manner after the alleged promise as before. It was neither paid, discharged, nor extinguished. The liability of Wolcott was unaltered, and the defendant in error obtained only the additional assurance of plaintiff in error.

By the charge, the jury were left to find for the defendant in error, upon the promise founded on forbearance to attach, in case they should find that such forbearance was

beneficial to the plaintiff in error, and this, I think, was incorrect.

There seems to have been no investigation by the court or jury of the right of defendant in error, on the facts, to recover, under the count for money had and received, any portion of the proceeds of the wool sold on the execution, in favor of plaintiffs in error; and we forbear discussing that subject.

I think the judgment of the Circuit Court should be reversed, with costs, and a new trial ordered.

The other Justices concurred.