DRAGGO *v.* WEST BAY CITY SUGAR CO.

1. NOVATION—SUFFICIENCY OF EVIDENCE.
   In an action by a lessor to recover rent, evidence examined, and *held*, insufficient to show a novation.
2. APPEAL AND ERROR—FINDING OF JURY—CONCLUSIVENESS.
   The finding of a jury on a disputed question of fact is conclusive.
3. STATUTE OF FRAUDS—PROMISE TO PAY DEBT OF ANOTHER.
   Where plaintiff leased lands to one having a contract with defendant for raising beets on the land, defendant making certain advances to the lessee for seed, etc., and reserving title to the beets until reimbursed, and also the right to enter, cultivate, and harvest the crop in case the lessee should fail to properly cultivate and harvest the same, an oral promise by defendant, on the lessee's failure to pay the rent, to pay the same to plaintiff, was void under the statute of frauds.

Error to Bay; Shepard, J. Submitted January 24, 1906. (Docket No. 182.) Decided May 24, 1906.

Assumpsit by Sophia Draggo against the West Bay City Sugar Company for rent. There was judgment for plaintiff, and defendant brings error. Reversed.

*Luther G. Beckwith,* for appellant.

*George R. Fox,* for appellee.

HOOKER, J. Sophia Draggo made a lease of a parcel of land (25 acres) to one Sovereign, for one year, agreeing to plow, harrow, pulverize, float, and roll, and drill beet seed in. She was to be paid therefor the sum of $8 per acre, one-half of said sum on or before November 20th, and the other half on or before December 20th, of the same year. Previous to the making of the lease, Sovereign had negotiated with the defendant regarding a contract for raising beets, and was promised such a contract by defendant, provided he should obtain 100

acres of land upon which to raise them. Later, he and the defendant made such a contract, which was in writing. It reserved the title to the beets in the defendant, until reimbursed for seed and advances, and reserved to itself the right to enter, cultivate, and harvest the crop in case Sovereign should fail to properly cultivate and harvest it. The plaintiff did not perform her contract with Sovereign as to the work to be done by her, and by arrangement it was done by Sovereign, upon an agreement that he should be allowed to deduct its cost from the first payment of rent. This work amounted to $105. Sovereign had some 60 acres of beets, all told, upon which the defendants had, by or about July 4th, advanced him between $1,300 and $1,400, and declined to advance more money. Thereupon he notified the plaintiff that he was going to quit, and that she must look to the defendant for her rent. Between three to five acres of this land was not sown to beets. Sovereign, or plaintiff's husband, or possibly both, informed the defendant that Sovereign had concluded to give up the crop, and plaintiff's husband gave testimony tending to show that the plaintiff stated to the defendant that she would proceed to enforce her claim, if defendant did not adjust the matter, and that, after two interviews, it was agreed that she should not sue to obtain possession of the land, and that defendant would pay the rent agreed to be paid by Sovereign. This was an oral arrangement, if it was made. The defendant's version of the matter is that its manager sent men to care for the crop, under its contract with Sovereign; that in its conversation with plaintiff and her husband, who were concerned about the collection of the rent, it said no more than that it would carry out its contract with Sovereign, and would pay the rent from the proceeds of the crop, if enough were left after reimbursing the defendant for its advances. The court refused a request to direct a verdict for the defendant, and the plaintiff recovered a verdict and judgment. Error has been brought by defendant.

Counsel for the defendant say that the court should have directed a verdict for the defendant on the ground that, if the promise was made as alleged, it was a promise to pay the debt of another, and void because not in writing, and furthermore that it was without consideration.

Counsel for the plaintiff claim: (1) That there was a new and original promise based upon a forbearance to sue; (2) that the proof shows a novation. The claim that there was a novation is set at rest by the following testimony of the plaintiff herself:

" *Q.* You never had any settlement with Mr. Sovereign?
" *A.* No.
" *Q.* You testified in justice's court that you never had had a settlement and you had not released Mr. Sovereign under the lease that he made with you?
" *A.* No, sir; he wasn't released only for that piece of potatoes.
" *Q.* Only for the piece of potatoes?"

Her husband also testified:

" *Q.* You never released Sovereign from his lease, have you?
" *A.* Yes, Mr. Sovereign told me he had thrown it up, and he told me to go to Mr. Bialy.
" *Q.* You say Sovereign told you he had thrown it up?
" *A.* Yes, sir.
" *Q.* Didn't you testify in justice's court that you never had released Sovereign?
" *A.* I never released him.
" *Q.* Did you never release him?
" *A.* I never understood it that way.
" *Q.* That you never had any settlement with him?
" *A.* I never had any settlement with him myself, certainly; but he told me to go to the West Bay City Sugar Company, and they would take the beets off my hands for the rent of my land.
" *Q.* Didn't you testify in justice's court that Sovereign told you that the sugar company would not advance him any more money, and that the sugar company was going to take charge of the beets, and that you would have to look to them for your pay?
" *A.* Yes, sir.

" *Q.* That is what Sovereign told you when he gave up the land as you say, or abandoned it?

"*A.* Yes, sir.

" *Q.* So that you knew at that time, before you saw Bialy at all, that they were going to take charge of the beets?

"*A.* No, sir; I couldn't say as I knew it. Mr. Sovereign told me to go to the West Bay' City Sugar Company.

" *Q.* Sovereign told you that they were going to take charge of the beets?

"*A.* He told me to go there, that they would take charge of the beets.

" *Q.* Didn't Sovereign tell you that they would not advance him any more money, that they were going to take charge of the beets, and that you would have to look to them for your money?

"*A.* Something in that way; yes, sir.

" *Q.* That was before you saw Bialy at all?

"*A.* Yes, that was the last conversation I had regarding the land with Mr. Sovereign."

The only other testimony which appears to have any significance upon this subject is that of Sovereign, who was called by defendant. He testified:

" *Q.* Did you tell Mr. Draggo that you were going to throw up this contract?

"*A.* I told him that the company would advance me no more money, that they were going to send a man up there to take charge, that I was going to quit, and he must look to them for his money. He said he would. He said he would hold his beets until he got it."

This is not inconsistent with the testimony of plaintiff and her husband that it was not their intention to release him, though they would try to get the rent from the defendant, and to that end would hold the beets.

In the other question there was a disputed question of fact, viz., whether defendant promised to pay the rent due from Sovereign, and for which it was not liable up to that time. This was a question for the jury, whose finding would necessarily be conclusive. This was, however, if made, a promise to pay the debt of another, and void un-

der the statute of frauds, unless the circumstances show
that it was a valid, new, and original promise.   The cases
of *Waldo* v. *Simonson*, 18 Mich. 345, and *Stewart* v. *Jerome*, 71 Mich. 201, cited in the brief of defendant's counsel, seem to settle the rule as contended for by them, being substantially like this case.   See, also, *Wierman* v.
*Sugar Co.*, 142 Mich. 422.

A verdict should have deen directed for the defendant.
The judgment is reversed, and a new trial ordered.

McALVAY, GRANT, BLAIR, and MOORE, JJ., concurred.