BOWEN v. NEEDLES NAT. BANK et al.

(Circuit Court of Appeals, Ninth Circuit. May 15, 1899.)

No. 499.

1. NATIONAL BANKS—POWERS—CONTRACT OF GUARANTY.
   A national bank has no power to lend its credit to any person or corporation, or to become guarantor of the obligations of another, except in the case of the transfer of promissory notes discounted, which is in the ordinary course of banking.

2. CORPORATIONS—CONTRACTS ULTRA VIRES—ESTOPPEL.
   A contract entered into by a corporation, which is ultra vires of its charter, cannot be ratified or become binding on the ground of estoppel, and the only ground on which the corporation can become liable to the payment of

money on account of such a contract, which has been performed by the other party, is that it has received a benefit or advantage thereby which it cannot justly retain.

3. NATIONAL BANKS—CONTRACT ULTRA VIRES—AGREEMENT TO PAY CHECKS.

A national bank advised plaintiff that it would pay all checks of a third person, although such person had no funds on deposit, as was known to both plaintiff and the bank. In reliance on such promise, plaintiff cashed checks of such person, and transmitted them to the bank for payment. The bank issued and sent to plaintiff its drafts on a correspondent for the amount of the checks, which drafts were refused payment. *Held,* that the contract was one purely of guaranty, and was ultra vires on the part of the bank, and the transaction gave plaintiff no right of action against it on the drafts.

Ross, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Southern District of California.

Abner T. Bowen sued the Needles National Bank upon four causes of action, the first, second, and third of which were upon bills of exchange for $8,775, $8,300, and $5,364, which it was alleged in the complaint were drawn by the defendant at its place of business in the state of California upon the Chase National Bank, of New York, and payable to the order of the plaintiff under the name of A. T. Bowen & Co., which bills of exchange had been dishonored by the drawee; and for a fourth cause of action the plaintiff alleged further that the defendant was indebted to him upon a check for $3,500, drawn by Isaac E. Blake upon the defendant bank, and payable to the order of the plaintiff. Upon the issues created by the answer the cause was tried before the court without a jury, and the court found for the defendant. 87 Fed. 430. No bill of exceptions is presented in the record, but it is contended by the plaintiff in error that upon the findings of fact made by the court the judgment should have been for the plaintiff. The findings are, in substance, as follows:

(1) That the defendant executed and delivered to the plaintiff the instruments called "bills of exchange" in the first, second, and third causes of action for the several amounts following, to wit, September 10, 1894, $8,775; September 12, 1894, $8,300; September 18, 1894, $5,364; and that said bills of exchange were drawn upon the Chase National Bank, of New York.

(2) That neither at the time of the drawing of said drafts nor at the time of their receipt by the plaintiff were there funds in the hands of the drawee to pay the same; that said drafts were not presented to the drawee for acceptance or payment.

(3) That the defendant provided for the payment of said drafts by drawing counter drafts at the same time upon Isaac E. Blake, payable at said Chase National Bank; that said counter drafts were not paid, but from the prior course of dealing between plaintiff and defendant and the said Chase National Bank and the said Blake the defendant had reason to believe, and did believe, that they would be paid.

(4) That the said drafts or bills of exchange mentioned in the first finding were made and transmitted by defendant to plaintiff in exchange for checks drawn by said Blake in favor of plaintiff and upon the defendant bank; that said Blake had no funds to his credit in the defendant bank, either at the time of drawing said checks or at the time of their presentation for payment.

(5) That the plaintiff is a citizen and resident of the state of New York doing business under the name and style of A. T. Bowen & Co., and the defendant is a national banking corporation organized under the laws of the United States.

(6) That prior to April 25, 1894, the plaintiff had advanced moneys to the said Blake upon checks drawn by him upon the defendant bank, and, being unwilling to advance further sums without some guaranty from the defendant, the latter, on said April 25, 1894, executed and delivered to the plaintiff the following telegram and letter:

"To A. T. Bowen & Co., 71 Broadway, New York:   We will pay checks signed 'Isaac E. Blake, by W. L. Beardsley.'          The Needles National Bank."

"A. T. Bowen & Co., New York City—Gentlemen: We hereby beg leave to confirm our telegram to you of even date: 'We will pay checks signed "Isaac E. Blake, by W. L. Beardsley," ' signed 'Needles National Bank.'
"Yours, truly, W. S. Greenlee, Cashier."

That on August 22, 1894, the said bank sent the plaintiff the following letter:

"A. T. Bowen & Co., New York City—Gentlemen: I am in receipt of telegraphic communication from Chase National Bank that our draft No. 2,200, for $7,500, payable to the order of Bowen & Co., has been refused payment until advices received from us guarantying the amount received. I immediately guarantied the amount to be $7,500.00, and I trust I have put you to no great inconvenience. It is simply a clerical error, which happens to us all some time or other, and in future we will endeavor to be more careful. I have telegraphed you to please pardon our error, and that we wish you to still continue your friendly relations with Mr. Blake and Mr. Beardsley, and that we guaranty absolutely the payment of Mr. Blake's checks as heretofore. I am truly sorry the mistake has occurred, and can venture the assurance that it will not happen again. The Keystone mine has just uncovered a large body of high-grade ore, and, if the vein continues as it is now for the next thirty days, it will make a big showing. Again asking your pardon, I remain, with best wishes,
"Very truly yours, W. S. Greenlee, Cashier."

(7) That on the 4th, 5th, 10th, and 11th days of September, 1894, respectively, upon checks drawn by the said Blake upon the defendant bank, the plaintiff advanced said Blake the following sums of money: $8,750, $8,300, $5,300, $3,500, and transmitted the checks to the defendant for payment.

(8) That in exchange for the checks for the first three sums of money the defendant transmitted to the plaintiff the bills of exchange mentioned in the first finding above, and returned to the plaintiff the fourth check, for $3,500, unpaid.

(9) That at the time of drawing said checks and at the time of their presentation to the defendant bank the said Blake had no funds whatever on deposit with the bank with which to pay the same, nor did he have any funds on deposit with the bank at the time when said letters and telegrams were sent, or at any time thereafter.

(10) That the bills of exchange mentioned in the first finding are in fact checks, and that defendant bank suffered no injury by the failure of the plaintiff to present the same to the said Chase National Bank for payment.

(11) That at the time of the drawing of said checks the plaintiff had constructive notice that the said Blake had no funds on deposit with the defendant bank to meet the same, and knew that the defendant was a national bank.

Upon these findings of fact the court found as conclusions of law that the undertaking of the Needles National Bank to guaranty the checks of Blake was ultra vires, and was void; and that the bills of exchange, having been made and executed to plaintiff under such void contract are null and void in the hands of the plaintiff, and that no cause of action can arise thereon.

John D. Works and Bradner W. Lee, for plaintiff in error.
Henry C. Dillon and Eber T. Dunning, for defendants in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

It may be stated in general that no banking corporation has the power to become a guarantor of the obligation of another, or to lend its credit to any person or corporation, unless its charter or governing statute expressly permits it. Farmers' & Mechanics' Bank v. Butchers' & Drovers' Bank, 16 N. Y. 125; Morford v. Bank, 26 Barb. 568; Thomp. Corp. § 5721. Under section 5136 of the Revised Statutes, national banking associations are given the power to "make contracts" and "to exercise by its board of directors, or duly authorized

officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin, and bullion; by loaning money on personal security; and by obtaining, issuing, and circulating notes according to the provisions of this title." There is in these provisions no grant of power to guaranty the debt of another, nor can such guaranty be said to be incidental to the business of banking. It has been so held in Seligman v. Bank, 3 Hughes, 647, Fed. Cas. No. 12,642, Norton v. Bank, 61 N. H. 589, and Bank v. Pirie, 27 C. C. A. 171, 82 Fed. 799. An apparent exception is recognized in the case of the discount of promissory notes by national banks which may be transferred with a guaranty, but it rests upon the ground that the guaranty of such paper is but an ordinary incident to its transfer in the course of banking. In People's Bank v. National Bank, 101 U. S. 181, the court said: "To hand over with an indorsement and guaranty is one of the commonest modes of transferring the securities named." There can be no doubt that the guaranty in the present case was ultra vires. It was aside and apart from the business of banking. The case is not that of an officer of a bank exceeding the powers delegated to him, but it is a case where the banking association itself has exercised powers in excess of those which were conferred upon it by statute. The plaintiff, equally with the defendant bank, was bound to take notice of the statute. He had notice also that there were no funds in the bank to meet the checks, and he knew that the contract was one of guaranty pure and simple. The transaction cannot be deemed a certification of checks, as urged by the plaintiff in error. The checks were not certified. They did not bear the acknowledgment of the bank of funds in its possession equal in amount to the checks, and available for their payment. The certification of checks is in the line of banking business, and is not prohibited to national banks. The only prohibition is that the bank shall not certify a check unless the drawer has on deposit at the time sufficient money to meet the same. The penalty for violation of the prohibition is to render the bank liable to the forfeiture of its charter, and to have its affairs wound up. Rev. St. § 5208; Thompson v. Bank, 146 U. S. 240, 13 Sup. Ct. 66.

But the present case is complicated by the fact that the plaintiff in error relied upon the guaranty, and cashed the checks on the strength thereof. There is authority for holding that under such circumstances the bank is estopped to deny its liability on the guaranty, notwithstanding that the contract was ultra vires. Thomp. Corp. §§ 6017, 6025; State Board of Agriculture v. Citizens' St. Ry. Co., 47 Ind. 407; Insurance Co. v. McClelland, 9 Colo. 11, 9 Pac. 771; Oil Creek & A. R. R. Co. v. Pennsylvania Transp. Co., 83 Pa. St. 160. "The principle, properly understood and applied, extends to every case where the consideration of the contract has passed to the corporation from the other contracting party, which consideration may, on well-understood principles, consist either of a benefit to the corporation or of a prejudice or disadvantage to the other contracting

party. It is therefore not strictly necessary to the proper application of the principle that the corporation has received a benefit from the contract, but it is sufficient that the other party has acted on the faith of it to his disadvantage; as where he has expended money on the faith of it." Thomp. Corp. § 6017. It is contended that this doctrine finds support in the language of decisions of the supreme court, as in Hitchcock v. Galveston, 96 U. S. 341, 351, where it was said:

"But the present is not a case in which the issue of the bonds was prohibited by any statute. At most, the issue was unauthorized. At most, there was a defect of power. The promise to give bonds to the plaintiffs in payment of what they undertook to do was, therefore, at furthest, only ultra vires; and in such a case, though specific performance of an engagement to do a thing transgressive of its corporate power may not be enforced, the corporation can be held liable on its contract. Having received benefits at the expense of the other contracting party, it cannot object that it was not empowered to perform what it promised in return."

And the court quoted with approval from the opinion in State Board of Agriculture v. Citizens' St. Ry. Co., 47 Ind. 407, the following words:

"Although there may be a defect of power in the corporation to make a contract, yet, if a contract made by it is not in violation of its charter, or of any statute prohibiting it, and the corporation has, by its promise, induced a party relying on the promise, and in execution of the contract, to expend money, and perform his part thereof, the corporation is liable on the contract."

Also, in Railway Co. v. McCarthy, 96 U. S. 258, 267, where the court said:

"The doctrine of ultra vires, when invoked for or against a corporation, should not be allowed to prevail where it would defeat the ends of justice, or work a legal wrong."

While the language of these expressions of the court may be said to be sufficiently broad and inclusive to justify the contention of the plaintiff in error, the court, in its adjudications, has limited the application of the principle to cases in which a corporation has, by the plea of ultra vires, sought to retain unjustly the fruits of a contract which has been performed by the other party thereto. In all such cases the action has been maintained, not upon the contract, nor to enforce its terms, but upon an implied obligation resting upon the defendant resulting from the fact that it has received money or property which it ought either to return or make compensation for.

In Salt Lake City v. Hollister, 118 U. S. 263, 6 Sup. Ct. 1059, it was said:

"The courts have gone a long way to enable parties who had parted with property or money on the faith of such contracts to obtain justice by recovery of the property or the money specifically, or as money had and received to plaintiff's use."

In Louisiana v. Wood, 102 U. S. 294, where a city had received money for bonds issued by it without authority, the court said:

"The only contract actually entered into is the one the law implies from what was done, to wit, that the city would, on demand, return the money paid to it by mistake."

94 F.—59

In Parkersburg v. Brown, 106 U. S. 487, 1 Sup. Ct. 442, in a similar case, the court said:

"The enforcement of such right is not in affirmance of the illegal contract, but is in disaffirmance of it, and seeks to prevent the city from retaining the benefit which it has derived from the unlawful act."

These citations sufficiently illustrate the ground, and the only ground, on which the supreme court has held that corporations may be liable to the payment of money on account of contracts which they have entered into ultra vires of their charter, and which have been performed by the other party to the contract. The right to relief in such cases rests upon the fact that the defendant corporation has obtained an advantage which it cannot justly retain. The general doctrine by which the present case may be ruled is thus stated in the language of the court in Central Transp. Co. v. Pullman's Palace-Car Co., 139 U. S. 24, 59, 11 Sup. Ct. 478, 488:

"A contract of a corporation, which is ultra vires in the proper sense,—that is to say, outside the object of its creation as defined in the law of its organization, and therefore beyond the powers conferred upon it by the legislature,— is not voidable only, but wholly void, and of no legal effect. The objection to the contract is not merely that the corporation ought not to have made it, but that it could not make it. The contract cannot be ratified by either party, because it could not have been authorized by either. No performance on either side can give the unlawful contract any validity, or be the foundation of any right of action upon it."

In the same case it was said (139 U. S. 54, 11 Sup. Ct. 486):

"It was argued in behalf of the plaintiff that, even if the contract sued on was void, because ultra vires and against public policy, yet that, having been fully performed on the part of the plaintiff, and the benefits of it received by the defendant, for the period covered by the declaration, the defendant was estopped to set up the invalidity of the contract as a defense to this action to recover the compensation agreed on for that period. But this argument, though sustained by decisions in some of the states, finds no support in the judgments of this court."

Later decisions of the supreme court have emphasized the views expressed in the foregoing quotations. Navigation Co. v. Hooper, 160 U. S. 514, 16 Sup. Ct. 379; Union Pac. Ry. Co. v. Chicago, R. I. & P. Ry. Co., 163 U. S. 564, 16 Sup. Ct. 1173; McCormick v. Bank, 165 U. S. 538, 17 Sup. Ct. 433; Bank v. Kennedy, 167 U. S. 362, 17 Sup. Ct. 831.

In Union Pac. Ry. Co. v. Chicago, R. I. & P. Ry. Co., Mr. Chief Justice Fuller said:

"A contract made by a corporation beyond the scope of its powers, express or implied, on a proper construction of its charter, cannot be enforced or rendered enforceable by the application of the doctrine of estoppel."

In McCormick v. Bank, Mr. Justice Gray, speaking for the court, said:

"The doctrine of ultra vires, by which a contract made by a corporation beyond the scope of its corporate powers is unlawful and void, and will not support an action, rests, as this court has often recognized and affirmed, upon three distinct grounds: The obligation of any one contracting with a corporation to take notice of the legal limits of its powers; the interest of the stockholders not to be subject to risks which they have never undertaken; and, above all, the interest of the public that the corporation shall not transcend the powers conferred upon it by law."

In Bank v. Kennedy it was said:

"It would be a contradiction in terms to assert that there was a total want of power by any act to assume the liability, and yet to say that by a particular act the liability resulted. The transaction, being absolutely void, could not be confirmed or ratified."

In the case at bar the defendant bank is not in the position of having received the fruits of the unlawful contract. The plaintiff's money was paid, not to the bank, but to Blake. It is not shown that the bank received any benefit whatever from the payment. There is no ground, therefore, upon which it can be adjudged that the bank shall make restitution. The judgment will be affirmed.

ROSS, Circuit Judge (dissenting). I agree, and so held in the case of Flannagan v. Bank, 56 Fed. 959, that a national bank has not the power to guaranty the debt or obligation of a third party; but, in my opinion, the findings of fact of the court below, upon which the present writ of error must be determined, do not present any such case. The complaint in the case counts upon four separate causes of action, each of the first three of which is upon a certain draft drawn by the defendant Needles Bank on the Chase National Bank, of New York, in favor of the plaintiff, doing business under the name of Bowen & Co., and delivered to the plaintiff, according to the findings, in exchange for a check of Blake drawn on the defendant bank, and discounted by Bowen & Co. The checks of Blake on the defendant Needles Bank in favor of Bowen & Co. were thus honored by the defendant bank, and the amounts thereof necessarily entered upon its books on the debit side of Blake's account. When the plaintiff presented and delivered those checks of Blake to the defendant Needles Bank, and received from the latter, in exchange therefor, its own drafts in the plaintiff's favor on the Chase National Bank, of New York, the plaintiff manifestly parted with all of its interest in those checks of Blake, holding in exchange therefor the obligations of the defendant bank. In respect to the first three causes of action, therefore, I am unable to see how, in view of the findings of fact, it can be properly held that the action is upon any guaranty of the debt or obligation of Blake. On the contrary, in respect to each of these three causes of action the defendant bank honored the checks of Blake drawn upon it, and in exchange for them issued its own obligations, upon which the first three causes of action rest. There is nothing in the findings of fact to the effect or tending to show—what seems to be assumed in the prevailing opinion—that Bowen & Co. knew that the drafts drawn in its favor by the defendant bank, and issued in exchange for Blake's checks upon the defendant bank, were only to be paid by means of drafts drawn by the defendant bank on Blake and in favor of the Chase National Bank, of New York. It seems to me that the effect of the decision here is to attach a condition to the drafts of the defendant bank sued upon, which is altogether unauthorized by any fact made to appear in the findings of the court below. According to the complaint as it appears in the record, the fourth cause of action is upon a check drawn by Blake "upon the plaintiff, A. T. Bowen & Co.," which, it is alleged, the defendant bank guaran-

tied.   If the complaint in respect to this cause of action be so taken and considered, it is plain that in respect to it the action is upon a guaranty which the defendant bank was not empowered to make. But the word "upon" was probably inserted in the record by mistake in place of the words "in favor of," since the findings of fact are that this check was drawn upon the defendant bank and in favor of the plaintiff, Bowen & Co., and it is so treated in the opinion of the court below, as also in the opinion of this court.   Thus considered, I am of opinion, in view of the findings of fact made by the court below, that in respect to this cause of action, also, the action is not upon any guaranty, but upon the direct promise of the defendant bank to pay the check so drawn by Blake upon it, upon the faith of which promise the plaintiff parted with his money.   What I have said is based upon the findings of the court below, which, as I understand it, are to control the judgment of this court.   In the opinion of the learned judge of the court below, however, reference is made to certain testimony given in the trial court tending to show that the plaintiff, Bowen & Co., did know that the drafts sued upon were to be paid by other drafts drawn by the defendant bank upon Blake in favor of the Chase National Bank, of New York, and were only to be paid in the event of Blake's paying those drafts, and that, in truth, all of the transactions in question constituted but the guaranty by the defendant bank of Blake's obligations, of which the plaintiff, Bowen & Co., had actual knowledge.   The testimony thus alluded to in the opinion of the trial judge finds some support in the agreement executed by Blake on the 12th of September, 1894, which is set out in the findings of fact that were made by the court below.   The evidence in the case may have been amply sufficient to justify findings to the effect that all of the transactions sued upon in reality constituted but the guaranty on the part of the defendant bank of the obligations of Blake, and that the plaintiff, Bowen & Co., had knowledge thereof. The difficulty is that the findings do not show this state of facts, and therefore I am of opinion that the judgment should be reversed, and the cause remanded for a new trial.