## COAL & IRON NAT. BANK OF THE CITY OF NEW YORK v. SUZUKI et al.

(Circuit Court of Appeals, Second Circuit. November 3, 1924.)

No. 19.

**I. Appeal and error ⬅997(3)—Where both parties move for directed verdict, both are bound by court's finding.**

Where both parties move for directed verdict, both are concluded by the finding of the court, if supported by any evidence.

**2. Banks and banking ⬅260(4)—Agreement by bank to hold deposit during life of charter party, held not a guaranty.**

An agreement by a national bank to hold a deposit made by a charterer during the life of the charter, which deposit was required by the charter party to secure fulfillment of its terms by the charterer, cannot be construed as a guaranty by the bank that the money would be paid over to the shipowner on the charterer's default.

**3. Banks and banking ⬅266—Agreement of bank to hold deposit, under a contract between plaintiff and the depositor, held not to give plaintiff a right of action at law against it to recover the deposit.**

A charter party required the charterer to deposit with plaintiff, the owner, a bank guaranty covering one-half a month's hire, as a guaranty of his fulfillment of his obligations

under the charter. Defendant bank notified plaintiff that it held a deposit made by the charterer, to be retained during the life of the charter party. *Held*, that the bank, which had no power to execute a guaranty, did not thereby assume any obligation to pay the money to plaintiff on breach of the charter by the charterer, which gave plaintiff a right of action at law against it.

In Error to the District Court of the United States for the Southern District of New York.

Action at law by Yone Suzuki and others, trading as Suzuki & Co., against the Coal & Iron National Bank of the City of New York. Judgment for plaintiffs, and defendant brings error. Reversed and remanded.

Defendant in error (hereinafter called Suzuki), brought an action at law against plaintiff in error (hereinafter called the bank); his complaint setting forth three causes of action as follows:

(1) Suzuki chartered a certain steamship to one Ellsworth, the charter hire to be paid monthly. The charter provided that Ellsworth was to deposit with Suzuki "a bank guaranty covering one-half month's hire for a guaranty of the perfect fulfillment of [Ellsworth's] obligations under this charter. This deposit to be maintained during the period of the charter." Further that pursuant to the above-quoted provision of the charter party the bank on or about September 17, 1919, agreed in writing with Suzuki to hold on deposit in its possession sufficient funds belonging to said Ellsworth to cover one-half month's hire of said steamship under said charter; all pursuant to the above-quoted charter agreement and "as a guaranty for the faithful fulfillment" of Ellsworth's obligations thereunder. Ellsworth defaulted in his obligations under said charter party, did not pay the charter hire, and the steamship was withdrawn from his service; whereupon Suzuki demanded of the bank payment to him of one-half month's hire. Such payment the bank refused; whereupon Suzuki declared that there was due and owing from the bank to him the sum of $50,000 and prayed judgment therefor.

(2) The facts alleged in the first cause of action are set forth at length, but the inference drawn therefrom is that "by reason of the premises" Suzuki had been damaged in the sum of $50,000, no part of which had been paid, although duly demanded, and judgment was prayed for accordingly.

(3) The preliminary facts were again set forth as hereinabove recited, and allegation made that pursuant to the terms of said charter party Ellsworth made a special de-

posit with the bank in the sum of $50,000, to wit, one-half month's hire of said steamship, which special deposit was accepted by the bank and notice thereof given by it to Suzuki; further that said deposit was made for the purpose of securing the faithful performance of said charter party, and the amount thereof was "payable to" Suzuki upon Ellsworth's default in fulfilling his charter; further alleged that Ellsworth did default as aforesaid, whereupon said special deposit "became due and payable" by the bank to Suzuki, and judgment for that amount was demanded.

To this complaint the bank offered in substance a general denial, and the case was permitted to go to trial without Suzuki being obliged to elect as between his causes of action, all of which were obviously but varying ways of stating a single set of facts. At trial the material facts were:

On September 15, 1919, when Ellsworth made the charter party referred to, he was a depositor in the bank, with a balance of about $100,000. He instructed the bank to retain or maintain a minimum to his credit of $40,000, and further caused the bank, on September 17th, to write Suzuki the following letter:

"Mr. O. M. Ellsworth has authorized and instructed us to hold in his name in this bank sufficient funds out of his balance to cover one-half month's hire of the above steamer, or approximately forty thousand dollars ($40,000), but not over fifty thousand dollars ($50,000), said funds to remain with us during the life of a certain charter party for the above vessel, which Mr. Ellsworth informs us was entered into between your good selves and Mr. Ellsworth under date of September 15, 1919. Please confirm to us the details of the above charter party for our records, with the further understanding that these funds will, of course, be entirely released simultaneously with the expiration of the charter party, unless released in the meantime by mutual agreement and instructions to us."

On the margin of this letter Ellsworth wrote "Approved" and signed his name. Before writing this letter a proper officer of the bank directed that Ellsworth's account as stated in the ledger should be marked, "Hold $40,000."

Upon receipt of the letter of the 17th, and on September 20th, Suzuki sent an employee to see that bank official who had signed the letter. This clerk testified that he told the bank officer: "This letter is satisfactory, [but] we would like a clause add-ed, to say that in the case of the nonfulfillment of this charter party by Mr. Ellsworth the bank would pay over to us the amount of money on deposit." He also declared that at the suggestion of the bank officer he left the letter with the bank, the officer saying that he "would talk to Ellsworth and arrange to have that correction or amendment made and would then return the letter."

The bank official testified that what Suzuki's clerk said was that "the letter was not satisfactory," whereupon he said that no change could be made without Ellsworth's approval, and the matter would be taken up with Ellsworth; there being no objection on the bank's part to make the change. The bank undoubtedly acted upon its own story, for on September 20th it canceled the retention order on Ellsworth's ledger account, and that depositor was thereafter free to withdraw his balance as he pleased.

The bank official did talk to Ellsworth, who gave no directions at once, but went away taking the letter with him. Much later, and about the middle of November, he returned the letter, and according to the bank's evidence declared that the arrangement contemplated therein had been canceled; whereupon the bank took back its own letter, stamped it "Canceled," and so far as the evidence shows Suzuki next saw it at the trial. Notwithstanding the fact that immediately after the visit from Suzuki's clerk the bank had stricken out the retention order on Ellsworth's ledger account, and the further fact that Ellsworth had the original letter, presumably thinking over what he would do in the premises, the bank, having on or about September 22d received the following letter from Suzuki:

"We are in receipt of your letter informing us that Mr. Ellsworth has instructed you to hold $40,000 minimum, $50,000 maximum, during the lifetime of the steamship Yaye Maru's charter party, in accordance with clause No. 29 of said charter party, copy of which we inclose herewith. We undertake on the fulfillment of this charter party, or should this steamer be lost before then, to entirely release the above-mentioned funds," —replied to that letter on September 26th as follows:

"We acknowledge receipt of your letter of the 22d instant, inclosing copy of the charter party covering steamship Yaye Maru, and note that you agree upon the fulfillment of this charter party, or upon the loss of the steamer before then, to entirely release the funds which Mr. Ellsworth has instruct-

ed us to hold during the lifetime of the said charter party, in accordance with clause 29 thereof."

Clause 29 of the charter party above referred to is quoted in the foregoing statement of the first cause of action. Several months later Ellsworth defaulted in paying charter hire to Suzuki, and he likewise drew out his entire balance from the bank. Suzuki, having demanded directly of the bank the payment of one-half month's hire and met with refusal, brought this action.

At the close of the evidence the bank moved successively to dismiss the three several causes of action. The court denied all the motions, and thereupon both parties moved for a direction. The court, without intimating which cause of action ought to prevail, directed verdict and judgment for one-half month's charter hire, with interest and costs, amounting to $56,487.58. The bank brought this writ, assigning for error, inter alia, the refusal to dismiss any or all of plaintiff's causes of action and the entry of the judgment.

Cook, Nathan & Lehman, of New York City (Harold Nathan, of New York City, of counsel), for plaintiff in error.

Hunt, Hill & Betts, of New York City (George C. Sprague and Joseph A. Barrett, both of New York City, of counsel), for defendants in error.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] Obviously Suzuki could not recover upon all of the pleaded causes of action. The denial of motions to dismiss all but one of the causes of action must have been error; but, both parties having finally moved for a directed verdict, both are concluded by whatever finding the court made. Beuttell v. Magone, 157 U. S. 154, 15 S. Ct. 566, 39 L. Ed. 654. To the same effect, Bank of the State v. Southern Bank, 170 N. Y. 1, 62 N. E. 677. In favor of the verdict, therefore, it is the duty of this court to sustain the judgment if, upon any view of the testimony, a verdict could have been rendered productive of the judgment below and consonant with any one of the causes of action.

The plaintiff evidently brought this action at law upon some kind of a contract imposing some pecuniary duty upon the bank in favor of Suzuki. Therefore one first asks: Did the bank have any contract of any kind with Suzuki? Upon this point a question of fact was presented, which should have gone to the jury, but which both parties avoided by moving for a directed verdict. That question is whether the story of Suzuki's clerk or that of the bank official as to what happened on September 20th was the truth. If the bank's story was true, then the moment that Suzuki's clerk, duly authorized, handed back to the bank its letter of September 17th, and said it was not satisfactory, Suzuki (the offeree) had met the bank's offer with a counter demand—a demand from which Suzuki never receded, and to which the bank never acceded; therefore there was no contract. But, if the story of Suzuki's messenger was true, then the offeree might be thought to have positively and unequivocally accepted the bank's offer, no matter whether the request for an additional clause was granted or refused. Williston, Cont. vol. 1, § 79. This is plainly a question that a jury might have answered either way; for the return of the letter as unsatisfactory was most persuasive of no contract (American, etc., Co. v. Moskowitz, 159 App. Div. 382, 144 N. Y. Supp. 532); whereas, if the letter was pronounced satisfactory, that fact plus the bank's subsequent letter writing was persuasive that a contract had been formed.

[2] In favor of the verdict we must hold that the court below found a contract; i. e., whatever contract can be spelled out of the letters of September 17th, 22d, and 26th. Here it makes no difference what kind of a contract the offeree (Suzuki) intended to accept; for such intention is wholly immaterial, except as it is expressed at the time of acceptance. Williston, Cont. vol. 1, § 66. Considering these letters, it is plain there never was a contract such as is set forth in the first and second causes of action, for never at any time did the bank agree with Suzuki, not only to hold a certain sum of money on deposit, but to pay that money over to him. There was no assumpsit on the bank's part, and that the first and second causes of action sound in assumpsit is too plain for argument.

The language of the charter party is immaterial, so far as concerns the bank. That corporation assuredly did not in terms execute a guaranty, and it cannot be inferred that it ever intended so to do, because it is an improper inference that the unlawful was intended. Corporations generally, in the absence of special statutory powers, are without authority to enter into such a contract (In re Rose Co. [C. C. A.] 275 F. 416); and specifically has a national bank no power whatever to become a guarantor

of the obligations of another (Bowen v. Needles Bank, 94 F. 925, 36 C. C. A. 553).

[3] It follows that the judgment must rest solely on the third cause of action. If it be assumed that the letters referred to constitute a contract for the benefit of Suzuki, the question of the nature and extent of the bank's obligation remains. The allegation is of an agreement to receive from Ellsworth and maintain a special deposit equal to one-half month's hire of the chartered steamship, which amount was in the language of the complaint "payable to" Suzuki immediately upon Ellsworth's default. It can have been only upon this reading of the contract that plaintiff below recovered.

But, as above pointed out, the bank never did and never could enter into a contract of guaranty; it did not and could not undertake the fulfillment of the guaranty requirement of clause 29 of the charter. Therefore the references in the September letters to clause 29 must, consonantly with law, be read restrictively; therefore, also, our holding must be and is that the bank made no other engagement, except to maintain a deposit in Ellsworth's name of not less than $40,000 during the life of the charter party referred to. Suzuki could give the bank no orders; Ellsworth could, and his orders were literally complied with, by directing that, from his ample balance of September 15th, $40,000 should be maintained or retained. This was a perfectly lawful agreement, for, as long as the rights of third persons are not injuriously affected, a deposit account may be the subject of any agreement approved by both the depositor and the bank. 7 C. J. p. 642.

The next inquiry is: By what right can Suzuki say that during the life of the charter party, but after Ellsworth had failed to pay charter hire, any sum of money was payable to him, Suzuki, and by him recoverable from the bank by action at law? It being remembered that the substantial difference between, as well as the technical separation of, law and equity, is rigidly maintained in the courts of the United States. Keatley v. United, etc., Co., 249 F. 296, 161 C. C. A. 304. Plaintiff's contention is, in substance, that by reasonable interpretation of the words used the bank agreed with Suzuki to hold a certain sum of Ellsworth's money "as security for the faithful fulfillment of" the charter party between Suzuki and Ellsworth. This last quotation is from an instrument signed by a bank official and made the basis of suit in Bushnell v. Chautauqua Bank, 74 N. Y. 290.

Argument here is that there was a "special deposit" with the bank for the purpose agreed upon between Ellsworth and Suzuki, and that therefore Suzuki may sue the bank at law for the amount of that deposit, as plaintiff thinks was done in the Bushnell Case. We first point out that there never was a deposit, special or otherwise, of more than $40,000. That was literal compliance with Ellsworth's orders. It was no concern of the bank's what a half month's hire amounted to.

And we next inquire whether, assuming a special deposit made, but no agreement to pay it directly to Suzuki at any time, the obvious wrong done to Suzuki by permitting Ellsworth to dissipate that special deposit can be made the subject of an action at law? Remembering that the bank was not and could not become a guarantor, and that it never promised to pay any money to Suzuki, the most that can be said in his favor is that the bank became a trustee of. and for this fund for the life of the charter party; i. e., until its fulfillment according to its tenor, which time has not yet arrived, and now never will arrive. Therefore it was a breach of trust for the bank to do what it did, and as a trustee it is liable to suit in the nature of an accounting.

The legal effect of the situation now portrayed is set forth in San Diego v. California Bank (C. C.) 52 F. 59, following National Bank v. Insurance Co., 104 U. S. 54, 26 L. Ed. 693, and specifically holding (as applied to this case) that, there never having been any agreement to pay any money out of Ellsworth's deposit account except to Ellsworth, such rights as Suzuki's can only be enforced in equity. It may possibly be stated that Suzuki had an equitable lien upon $40,000 worth of Ellsworth's drawing account (In re Interboro Corp. [C. C. A.] 288 F. 334), or that he had an equitable title after default in the specified portion of Ellsworth's funds (Union Stockyards v. Gillespie, 137 U. S. 411, 11 S. Ct. 118, 34 L. Ed. 724).

To the foregoing authorities from the courts of the United States we do not think the Bushnell Case, supra, is opposed—not that it would make any difference if it were. The Bushnell Case was plainly equitable; for, if that be not plain from the admitted fact that there never was any contractual relation between Bushnell and the Chautauqua Bank, it is plain from the conduct of the New York Court of Appeals that the matter was there regarded as on the equitable side of the court, because of the dis-

position of costs. It was only because the matter was equitable that the court had power to direct that all costs, including those of the trial court, should be deducted out of the fund held by the Chautauqua Bank. It is elementary that, while costs of appeal are always discretionary, costs of trial are discretionary only in equity; at law they are matter of right.

It follows that, on this record, whatever cause of action Suzuki had must rest on the case sought to be stated in the third cause of action, and that case is equitable and not legal. If, pursuant to the statute, the third cause of action were transferred to the equity side of the court below, and a record there made exactly the same as is here presented, and if the court should hold that there ever was any contract of any kind between Suzuki and the bank, then that contract would be to maintain a deposit of $40,-000 and no more; and the disposition of the cause would be that the plaintiff, having joined Ellsworth as a defendant, would recover that $40,000, without interest, and the bank's costs would be deductible from the fund.

We do not know whether, upon another trial, the facts will appear as they do now; therefore, under the statutes, all we can do is to reverse the judgment, with costs to the plaintiff in error, and remand the case for such further proceedings as may be agreeable to law.