DANIEL STEWART AND ANDREW T. STEWART v. GEORGE JEROME.

*Statute of frauds—Verbal promise to pay the debt of another.*

A *verbal* promise by a mortgagee to pay a debt due a creditor of a mortgagor, in consideration of which the creditor agreed to and did refrain from attaching property belonging to the mortgagor *not* covered by the mortgage, and which property was afterwards converted to his own use by the mortgagee, is void under the statute of frauds.

Error to Wayne.   (Brevoort, J.)   Argued June 5, 1888. Decided July 11, 1888.

*Assumpsit.*   Defendant brings error.   Reversed.   The facts are stated in the opinion

*H. C. Wisner,* for appellant.

*Larned & Larned (D. Augustus Straker,* of counsel), for plaintiffs.

[The points of counsel, and the authorities relied upon, are so fully discussed in the opinion, that their restatement is omitted.—REPORTER.]

CHAMPLIN, J. This suit was commenced by declaration which consisted of the common counts in *assumpsit*.

The defendant demanded a bill of particulars, and one was served, which consisted of several items from May 2 to June 5, 1884, of oats, amounting to $395.66, and a statement that the goods were sold and delivered to Joseph H. Morris for feed for his livery horses at his stables on Michigan Grand avenue at Detroit.

That said Morris owed defendant $10,000, and to secure the same defendant held a chattel mortgage on Morris' horses, harnesses, and other property in said stables, dated June 4, 1884; that said mortgage included no goods or stock of Morris acquired by him after the date thereof, and that Morris purchased and had in his stables stock, goods, and property not covered by said mortgage to the amount of $4,000, and on or about June 20, 1884, said Morris absconded with intent to defraud his creditors; that said Jerome took possession of all of said horses, coupés, carriages, harnesses, and other property, including stock and property not included in his mortgage, and more than sufficient to satisfy plaintiffs' said demand, which with the mortgaged property, was liable to attachment; that of the above written account, all being past due and unpaid, $200 worth of the oats were at the time Morris absconded then in the stables, and not fed out, and were purchased fraudulently, and were repleviable by plaintiffs, on the ground that they were obtained by fraud by said Morris, and said plaintiffs intended to proceed to replevin said $200 worth of oats, and intended to proceed by attachment against the residue of the property taken by defendant to satisfy his mortgage, and not covered by it; and the defendant, well knowing all the above premises, and in order to prevent said plaintiffs from enforcing payment of their just debt and lien by attachment and replevin, did promise and agree with said

plaintiffs that if they would forbear to enforce their said claims he, said defendant, would assume and pay said debt of said plaintiffs, and relying on said promise, plaintiffs did so forbear, and took no steps to replevin or attach or attempt collection of their debt, and have hitherto forborne until the commencement of this suit, relying on his, defendant's, promise to pay said debt. The defendant pleaded the general issue.

Upon the trial of the cause the plaintiffs, against objections made by counsel for defendant that the proof offered was inadmissible under the pleadings, introduced evidence tending to prove the indebtedness of Morris to plaintiffs, the execution of the chattel mortgage by Morris to defendant, the departure of Morris, and the possession taken by defendant of the whole stock and property in the stable, and the promise of the defendant. The plaintiffs are copartners, composed of Daniel Stewart, the father, and his son, Andrew T.

As soon as Daniel Stewart had learned that Morris had left the city, he went to the stables on Michigan Grand avenue, and found defendant's servants in possession, and one of them informed him that defendant wished to see him immediately, and took him in a buggy to the office of defendant, where he had a conversation with defendant as follows :

"State what that conversation was fully.

"A. He asked me how much Mr. Morris owed me, and I told him he owed me $395.66, at the same time handing him the bill. He looked at it a moment, and turned around to me and asked me what I was going to do, and I told him I was going to replevin my oats and attach other property to get my money; that I could not afford to lose it.

"Q. Now, at that time, what was the fact of your intending to attach any particular property in the stable that he had recently been purchasing?

"A. Mr. Morris offered me, a few days before he left,

a span of large bay mares, and offered me them cheap, tried to persuade me very much to buy them, and also a two-seated wagon that Morris told me was not included and Jerome had no business with.

"*Q*. Then you intended to attach what,—these horses and the wagon, you say, and the open account?

"*A*. Yes, sir.

"*Q*. Now, Mr. Jerome asked you what you were going to do, and you told him you were going to replevin your oats, and attach some other property, and get your debt. What did he say to you?

"*A*. Be quiet, do nothing, and I will pay you; that is it exactly.

"*Q*. What else did he say?

"*A*. That my bill was similar to a supply man on a railroad,—when the railroad broke down the supply man had to be paid whoever was paid, and he would pay me.

"*Q*. What did you say to that?

"*A*. Well, I agreed to it."

He further testified that he did not replevin or attach because he relied upon Mr. Jerome paying him, and was satisfied he would; that he reported to his son the interview with Mr. Jerome, and he was not satisfied with it; and they both went the second day after to see Mr. Jerome, when nearly the same conversation was had as before, Mr. Jerome agreeing to pay them if they " stood quiet," and would wait six months, to which plaintiffs agreed; at the end of which time they called upon him, when he offered $200 in cash to settle the bill, or, if they would wait 10 months, he would pay the whole face of it. The plaintiffs then agreed to wait 10 months, and directed an entry to be made on their books so they would know when the 10 months was up. At the end of this time plaintiffs again called upon defendant for payment, and he was not yet ready;—

" Complained that he had sold his business to Edmunds, but got very little or no money, and he was scarce of money."

Later they called again, and the plaintiff Daniel Stew-

art testified to the conversation that then occurred as follows:

"My son went to him and asked him what was the reason he would not pay us: Why didn't you let us replevin, and attach at once, and get our money? Jerome got a little wrathy, and he said that unless he was willing to pay the bill we could not get it any more than we could get the paint off the wall."

The defendant introduced no testimony, and the plaintiffs recovered.

The defense to the action is placed upon two grounds:

1. That the promise of defendant is void under the statute which enacts that every special promise to answer for the debt, default, or misdoings of another person shall be void unless some note or memorandum thereof be in writing, and signed by the party to be charged therewith, or by some person by him thereunto lawfully authorized.

2. If not void, no recovery can be had upon such promise under the common counts in *assumpsit*.

This clause of the statute of frauds has often come before this Court for consideration. In *Corkins v. Collins*, 16 Mich. 478, the plaintiff sued Collins on a verbal promise to pay a board bill and money lent, due from one James Sykes. The consideration was the release of certain trunks supposed to be held for the debt. The defense was the statute of frauds. Mr. Justice CAMPBELL said:

"Such a release of a valid lien or claim would be a sufficient consideration for a written promise, for, if a consideration passes from the promisee, it usually makes no difference to whom it passes. * * * It is not pretended that an extension of time, or any other agreement involving no release of property or extinguishment of liability, if made in favor of the principal debtor, would authorize the verbal promise of a third person to pay the debt to be enforced. But a distinction is sought to be drawn where property is released or given up to the debtor. There is no obvious reason for any such distinction. The law puts all valuable considerations on the same footing. * * * When by the release of property from a lien

the party promising to pay the debt is enabled to apply it. to his own benefit, so that the release inures to his own advantage, it is quite easy to see that a promise to pay the debt in order to obtain the release may be properly regarded as made on his own behalf, and not on behalf of the original debtor; and any possible advantage to the latter is merely incidental, and is not the thing bargained for. That promise is therefore in no proper sense a promise to answer for anything but the promisor's own responsibility, and need not be in writing."

In *Calkins v. Chandler*, 36 Mich. 320, it was held that an agreement to extend the time of payment and forbear to sue a third person, who was plaintiff's debtor, was a sufficient consideration for defendants' promise to pay. And this was because the promise of defendants to pay the debt of such third person was at the same time, when paid, to apply on an indebtedness that was to accrue against themselves, and was consequently a promise to answer for their own debt. And Chief Justice Cooley in that case quotes with approval from the opinion of Chief Justice Shaw, in *Nelson v. Boynton*, 3 Metc. 396, as follows:

"The rule to be derived from the decisions seems to be this: That cases are not considered as coming within the statute when the party promising has for his object a benefit which he did not before enjoy accruing immediately to himself. But where the object of the promise is to obtain the release of the person or property of the debtor, or other forbearance or benefit to him, it is within the statute."

In *Curtis v. Brown*, 5 Cush. 488, Shaw, C. J., said:

"It is no sufficient ground to prevent the operation of the statute of frauds that the plaintiff has relinquished an advantage, or given up a lien, in consequence of the defendant's promise, if that advantage had not also directly inured to the benefit of the defendant, so as in effect to make it a purchase by the defendant of the plaintiff. The cases in which it has been held otherwise are those where the plaintiff, in consideration of the promise, has

relinquished some lien, benefit, or advantage for securing or recovering his debt, and where by means of such relinquishment the same interest or advantage has inured to the benefit of the defendant. In such cases, although the result is that the payment of the debt of the third person is effected, it is so incidentally and indirectly,. and the substance of the contract is the purchase by the defendant of the plaintiff of the lien, right, or benefit in question."

The doctrine was declared and acted upon in several other cases in that state. *Fish v. Thomas,* 5 Gray, 45; *Jepherson v. Hunt,* 2 Allen, 417; *Furbish v. Goodnow,* 98 Mass. 296; *Ames v. Foster,* 106 Id. 400; *Wills v. Brown,* 118 Id. 137; *Fears v. Story,* 131 Id. 47.

The same doctrine is recognized in Wisconsin (*Clapp v. Webb,* 52 Wis. 638, 9 N. W. Rep. 796); and in Indiana (*Crawford v. King,* 54 Ind. 10; *Palmer v. Blain,* 55 Id. 11); and in Vermont (*Whitman v. Bryant,* 49 Vt. 512).

In New York the exposition of this section has been somewhat variant, as will be seen by reference to *Leonard v. Vredenburgh,* 8 Johns. 29; *Mallory v. Gillett,* 21 N. Y. 412; *Brown v. Weber,* 38 Id. 187; *Ackley v. Parmenter,* 98 Id. 425. The latest enunciation of the principles which should be applied in cases coming under this provision of the statute in that state is by Mr. Justice Finch, in *Rintoul v. White,* 108 N. Y. 222 (15 N. E. Rep. 318). He reviews the leading decisions in New York above cited, and says they—

"Have ended in establishing the doctrine in the courts of this state, which may be stated with approximate accuracy thus: That where the primary debt subsists, and was antecedently contracted, the promise to pay it is original when it is founded on a new consideration moving to the promisor, and beneficial to him, and such that the promisor thereby comes under an independent duty of payment, irrespective of the liability of the principal debtor."

The difficulty in applying the doctrine, and one which

has given rise to much seeming conflict in the authorities, lies in the failure to distinguish between the consideration for the promise of a third person to pay the debt of another, and the promise itself, whether it be to answer for the debt of another, or to pay or perform his own obligation.   There must be a consideration to support every promise, whether it be evidenced by writing or not; and where the promise is to answer for the debt, default, or misdoing of another, the statute requires that such promise must be evidenced by writing.

Under the undisputed testimony there can be no doubt but that in consideration of Mr. Jerome's promise the plaintiffs relinquished an advantage which they had for securing their own debt.   The oats and the horses and buggy not covered by Jerome's chattel mortgage were liable to be attached at the suit of the plaintiffs.   This is a sufficient consideration for the promise; but the difficulty is that this advantage which the plaintiffs forebore to exercise or appropriate did not inure to the benefit of the defendant.   The plaintiffs had no lien which they released.   They had no title to any of the property which they transferred to defendant.   It was alleged in the notice attached to the bill of particulars that the plaintiffs owned the oats which they had delivered to defendant because they were obtained by fraud, but there is no evidence which supports such claim.

It is true that, by forbearing to attach such oats and other property, it was left in the hands of Jerome, and it may be inferred that he converted such property to his own use; but he derived no right or title thereto from plaintiffs, and is still liable to account to or pay for such property to Mr. Morris, or the true owner, whoever he may be.   There was nothing, therefore, which inured to the benefit of defendant, received from plaintiffs, which supports a new promise or agreement to assume and pay

the amount as an original debt from defendant to plaintiffs.

There is nothing in the facts or circumstances of this case to distinguish it from that of *Waldo v. Simonson*, 18 Mich. 345, and we think this case is ruled by that. Had the title to the oats in the bin remained in the plaintiffs, and the defendant under his promise had appropriated and fed the oats to his animals, the case would have been different; or had the plaintiffs attached first, and then, in consideration of the promise, released, so that the rights of possession acquired by the attachment passed to defendant, it would have afforded a consideration for the promise to pay the debt as his own within the authorities.

The objection to the pleadings stands or falls with the ruling upon the question as to the promise being void under the statute of frauds. If the promise had been held good as an original promise to pay defendant's own debt, the common counts would have been sufficient, and a recovery could have been maintained under the count stated.

The judgment must be reversed, and a new trial granted.

The other Justices concurred.