MINE & SMELTER SUPPLY CO. v. STOCKGROWERS' BANK.

(Circuit Court of Appeals, Eighth Circuit. October 28, 1909.)

No. 3,015.

1. FRAUDS, STATUTE OF (§§ 17, 33*)—PROMISE TO ANSWER FOR DEBT OF ANOTH-
ER—WRITING INDISPENSABLE UNLESS MAIN PURPOSE AND EFFECT ARE TO
BENEFIT PROMISOR.

(a) An agreement in writing, or some note or memorandum thereof, sub-
scribed by the party to be charged, is indispensable to the validity of a
promise to answer for the debt, default, or miscarriage of another, where
the chief object of the promisor is to guarantee the obligation of another,
and the promisor derives no direct and substantial benefit therefrom.

(b) But where the main purpose of the promisor is to serve his own in-
terest and in consideration of his promise to answer for the debt, default,
or miscarriage of another he secures for himself a direct and substantial
benefit, his promise becomes his original obligation, which carries with it

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and sustains his incidental undertaking to answer for another's debt, and it is valid without writing.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 16, 53; Dec. Dig. §§ 17, 33.*]

2. FRAUDS, STATUTE OF (§ 16*)—WRITING UNNECESSARY TO SUSTAIN CONTRACT TO PAY PROMISOR'S DEBT BY PAYING HIS CREDITOR'S DEBT.

A promise to pay the debt of the promisor by paying his creditor's debt to another is an original undertaking of the promisor, and no writing is requisite to support it.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 22–26; Dec. Dig. § 16.*]

3. FRAUDS, STATUTE OF (§ 33*)—CONSIDERATION NECESSARY TO SUSTAIN PROMISE TO PAY ANOTHER'S DEBT.

Loss to the promisee is a sufficient consideration for a promise in writing to answer for another's debt.

But a direct and substantial benefit to the promisor is indispensable to sustain such a promise, in the absence of writing.

[Ed. Note.—for other cases, see Frauds, Statute of, Cent. Dig. §§ 50–53, 56; Dec. Dig. § 33.*]

4. FRAUDS, STATUTE OF (§§ 33, 106*)—PROMISE TO PAY ANOTHER'S DEBTS—FACTS—CONCLUSION.

A bank had agreed to loan H. & S. $20,000, to be drawn on their checks. H. & S. owed the S. Co. $10,078.50 for goods bought, part of which had not been shipped and part of which were in transit. The bank made a parol contract with H. & S. and the S. Co. to pay the debt of H. & S. by cash, or its cashier's check, to the amount of $5,870.74, by its note payable in about three months for $3,813.21 and by paying $394.55 when certain goods were shipped to H. & S., in consideration that the S. Co. would ship these goods to H. & S., would release to them the goods in transit, and would dismiss a baseless action against the bank. The S. Co. shipped the goods and dismissed the action. The bank delivered its cashier's check, but refused to pay the check, and refused to further perform its parol agreement. *Held:*

(a) The main purpose of the parol agreement was to guarantee the payment of the debt of H. & S. to the S. Co. The bank did not derive sufficient consideration from the shipment of the goods, the release of those in transit, and the dismissal of the action against it to transform the contract from one of guaranty to an original undertaking on its part, and the parol agreement was void under the statute of frauds.

(b) But the cashier's check was an agreement in writing, subscribed by the party to be charged, to pay $5,870.74 of the debt of H. & S. to the S. Co. The loss incurred by the S. Co. by the shipment of the goods was a sufficient consideration to sustain it, and it was a valid contract under the statute of frauds.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 51, 210; Dec. Dig. §§ 33, 106.*]

5. BANKS AND BANKING (§ 99*)—ULTRA VIRES—CASHIER'S CHECK TO PAY ANOTHER'S DEBT IS PRESUMPTIVELY WITHIN THE POWERS OF A BANK.

The guaranty by a bank without benefit to itself of the debt of another in which it has no interest is beyond its powers.

But a cashier's check issued by a bank to pay the debt of another is presumptively within its powers, because it has lawful authority to obtain money, commercial paper, or other lawful security as consideration for the issue of the check before it emits it, and the legal presumption is that it and its officers have discharged their duty and acted within their powers.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 236; Dec. Dig. § 99.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

**6.** CORPORATIONS (§ 389*)—CONTRACTS PRESUMPTIVELY VALID WHERE UNDER ANY CIRCUMSTANCES THEY MAY BE SO.

Until the contrary is proved, contracts and promises of corporations are presumed to be within their powers, and to be valid, where under any circumstances they may be so.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1568; Dec. Dig. § 389.*]

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Wyoming.

George S. Redd (George Stidger and Horace G. Benson, on the brief), for plaintiff in error.

William A. Riner (Gibson Clark and John D. Clark, on the brief), for defendant in error.

Before SANBORN and VAN DEVANTER, Circuit Judges, and WILLIAM H. MUNGER, District Judge.

SANBORN, Circuit Judge. The Mine & Smelter Supply Company complains because the court below sustained a demurrer to and dismissed its complaint, which set forth the following facts: The defendant, the Stockgrowers' Bank, had agreed to loan L. A. Holdredge & Son $20,000 to be paid out upon their checks and to be used in the construction of the Thermopolis waterworks. L. A. Holdredge & Son owed the supply company $10,078.50 for goods which they had purchased of the supply company, and which were to be wrought into the construction of the waterworks. Part of these goods had been received by them, part were in transit, and hydrants of the value of $394.55 had not yet been shipped. The bank had agreed, partially by parol and partially in writing, to accept certain drafts drawn by the supply company upon the account of Holdredge & Son with the bank. Two drafts, each for $500 had been drawn, the bank had refused to pay them, they had been protested at an expense to the supply company of $5, and the supply company had brought an action against the bank upon them, which was then pending. In this conditions of affairs the bank, on November 9, 1906, agreed with the supply company and with Holdredge & Son to pay the debt of the latter to the supply company by delivering to it cash or its cashier's check for $5,870.74 and its promissory note for $3,813.21, payable on February 1, 1907, and by paying it $394.55 when certain hydrants, the bill for which was included in said debt, were delivered to Holdredge & Son, to charge the amount of this debt against the loan which the bank had agreed to make to Holdredge & Son, and to do this in consideration that the supply company would release to Holdredge & Son the goods in transit, that it would dismiss its suit against the bank, and that it would ship to Holdredge & Son the hydrants. Thereupon the supply company released the goods, dismissed its suit, and shipped the hydrants, and the bank issued and delivered to the supply company its cashier's check for $5,870.74 and agreed to give the supply company its note for $3,813.21, payable February 1, 1907. The bank afterwards

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

refused to pay its check, and refused to pay any part of the indebtedness of Holdredge & Son to the supply company.

All the agreements of the bank were by parol, except its check for $5,870.74, and the court below held that they were void under the statute of frauds, and dismissed the complaint for that reason.

The statutes of the state of Wyoming, where this contract was made, declare that "every special promise to answer for the debt, default, or miscarriage of another person" shall be void unless the promise, or some note or memorandum thereof be in writing and subscribed by the party to be charged therewith. Rev. St. Wyo. 1899, § 2953.

Counsel for the plaintiff contend that the agreement of the bank to pay the debt of Holdredge & Son to the supply company out of the loan it had agreed to make to Holdredge & Son did not fall under the ban of this statute, because it was a promise of the bank to discharge its own obligation to make the loan to Holdredge & Son, and its promise to pay the supply company was a mere incident to its main undertaking. The decisions which relate to the argument presented in support of this position are innumerable and inharmonious, but the rules of law by which it must be tried are these:

A legal consideration and a writing subscribed by the party to be charged are both indispensable to sustain a special promise to answer for the debt, default, or miscarriage of another under the statute of frauds. Mallory v. Gillett, 21 N. Y. 412, 414, 416; Loomis v. Newhall, 15 Pick. (Mass.) 159, 166, 167; Stone v. Symmes, 18 Pick. (Mass.) 467; Berkshire v. Young, 45 Ind. 461, 467; Langford v. Freeman, 60 Ind. 46, 50; Hassinger v. Newman, 83 Ind. 124, 126, 43 Am. Rep. 64.

Where there is such a writing, the relinquishment of a right, lien, or advantage, or any substantial loss by the creditor to be paid, although no direct benefit or advantage accrues to the promisor, constitutes a sufficient consideration to sustain the promise. Corkins v. Collins, 16 Mich. 477, 481, 482; Mallory v. Gillett, 21 N. Y. 412, 414.

Where the promisor agrees to discharge his own debt by paying the debt of his creditor at the latter's request, as in a case where a bank undertakes, at the request of one who has money or property deposited with it, to pay the creditor of the depositor out of this money or in consideration of this property, the contract is not a special promise to pay the debt of another, within the meaning of the statute, and no writing is necessary to sustain it. The main undertaking in such a case is to pay the promisor's own debt in the manner requested by his creditor, and the promise to pay the latter's debt to another is a mere incident of the chief undertaking, which is valid without a writing, and which carries with it and sustains the incidental promise to pay the debt of the creditor's creditor. Griffin v. Cunningham, 183 Mass. 505, 67 N. E. 660; Hoile v. Bailey, 58 Wis. 434, 17 N. W. 322; Putney v. Farnham, 27 Wis. 187, 189, 9 Am. Rep. 459; Fosha v. Prosser, 120 Wis. 336, 97 N. W. 924, 926; Morgan v. S. M. L. V. Co., 97 Wis. 275, 72 N. W. 872; De Walt v. Hartzell, 7 Colo. 601, 4 Pac. 1201; Hughes v. Fisher, 10 Colo. 383, 386, 15 Pac. 702.

Where the promise to pay the debt of another is not the chief purpose of the transaction in which it inheres, and a substantial and

valuable consideration therefor inures directly to the benefit of the promisor, as in a case in which he obtains a conveyance of property in consideration of his promise to pay the debt of the grantor, or to pay an incumbrance upon the property, the promise does not fall within the statute, and no writing is necessary to support it.    In cases of this character, the fact that the object of the promisors is not to answer for the debts, defaults, or miscarriages of others, but is to obtain substantial benefits or advantages to themselves, which they actually secure as the consideration for their agreements, distinguishes these promises from those within the statute, and makes them original agreements of the promisors, which are valid without writings.    Davis v. Patrick, 141 U. S. 479, 187, 488, 489, 12 Sup. Ct. 58, 35 L. Ed. 826; Emerson v. Slater, 22 How. 28, 37, 38, 43, 44, 16 L. Ed. 360; Mallory v. Gillett, 21 N. Y. 412, 123, 433; Stewart v. Jerome, 71 Mich. 201, 38 N. W. 895, 898, 15 Am. St. Rep. 252; Johnson v. Knapp, 36 Iowa, 616, 618; Pratt v. Fishwild & Williams, 121 Iowa, 612, 96 N. W. 1089, 1092; Cox v. Halloran, 82 App. Div. 639, 81 N. Y. Supp. 803; Roy & Titcomb v. Flin, 10 Ariz. 80, 85 Pac. 725; Justice v. Tallman, 86 Pa. 147; Harrison v. Simpson, 17 Kan. 508; Stariha, Executor, v. Greenwood, 28 Minn. 521, 11 N. W. 76; Hoile v. Bailey, 58 Wis. 434, 17 N. W. 322; Fosha v. Prosser, 120 Wis. 336, 97 N. W. 924, 926; Morgan v. S. M. L. V. Co., 97 Wis. 275, 72 N. W. 872.

But where the main purpose of the transaction is the promise to pay the debt of another, and no substantial benefit or advantage inures directly to the promisor in consideration thereof, the agreement falls under the ban of the statute, and it cannot be sustained, in the absence of a writing subscribed by the party to be charged.    Mallory v. Gillett, 21 N. Y. 412, 420; Gray v. Herman, 75 Wis. 453, 44 N. W. 248, 249, 6 L. R. A. 691; Weisel v. Spence, 59 Wis. 301, 18 N. W. 165; Stewart v. Jerome, 71 Mich. 201, 38 N. W. 895, 898, 899, 15 Am. St. Rep. 252.

Laying out of view the cashier's check for $5,870.74, which will be considered later, there was a sufficient consideration in the loss inflicted upon the supply company by its delivery to Holdredge & Son of the hydrants and the goods in transit to sustain the bank's promise to pay the latter's debt, if that promise had been in writing.    This consideration, however, was insufficient to support that promise without writing, because the goods were delivered to Holdredge & Son, and the bank derived no benefit from that delivery.    It was only in case the chief purpose of the bank in making this promise was to obtain some substantial benefit to itself, to which the payment of the debt of Holdredge & Son was incidental, and in case it obtained such an advantage, that its promise became its original contract, and was valid without writing.

Counsel insist that the main object of the promisor was to benefit itself, and that it secured a substantial advantage because it succeeded, by means of its promise, in securing an opportunity to loan its money to Holdredge & Son, and because the promise was in reality its undertaking to pay its own debt.    But the bank and Holdredge & Son had agreed before this transaction that the bank would loan that concern, whenever they drew their checks upon it, the $20,000, of which the $10,078.50 to be paid to the supply company was a part, so that

its promise to pay the latter amount out of that loan gave it no additional interest, discount, or advantage, nor was this contract an agreement by the bank to pay its own debt. A promise to make a loan is not a loan. It does not make the promisor the debtor of the promisee to the amount of the proposed loan. Such an agreement is not susceptible of specific enforcement. The only remedy for its breach is an action at law for damages, and where, as in this case, there is no pleading or proof of special damages, nothing but nominal damages may be recovered, because the measure of the damages is legal interest, and the promisee is chargeable with the same rate as the promisor. If the bank had made the loan, or taken the commercial paper or other obligation of Holdredge & Son for the $20,000, the bank would have become their debtor, and its promise at their request to pay its debt to them by paying their debt to the supply company would have been valid and binding without writing, because it would have constituted an original undertaking of the bank for its own benefit upon adequate consideration inuring directly to it. But a mere unenforceable agreement to make a loan creates no substantial debt, and this promise cannot be sustained on the theory that it was an agreement of the bank to discharge its own obligation.

Counsel argue that the bank derived such a benefit from the dismissal of the action against it upon the two drafts, each for $500, as will sustain its promise without writing. But the complaint discloses no cause of action against the bank upon either of these drafts. It contains averments that they were drawn upon the bank by the supply company, that the bank refused to pay them, that they were protested at the expense of the supply company, and that the latter company brought an action upon them; but it contains nothing more material to the question of the liability of the bank thereon. A bank is not liable upon a draft upon it, which it has neither accepted, nor agreed to accept; and the dismissal of an action, which clearly appears by the pleading of the plaintiff to be without foundation, is no substantial benefit to the defendant, and it does not constitute a sufficient consideration to transform a guaranty into an original undertaking. Kidder v. Blake, 45 N. H. 530, 532, and cases there cited; Long v. Towl, 42 Mo. 545, 549, 97 Am. Dec. 355; Parsons on Contracts (9th Ed.) p. 481; Wade v. Simeon, 52 English Common Law Reports, 546, 566; Cline & Co. v. Templeton, 78 Ky. 550, 552.

Finally, upon this subject, the facts pleaded are convincing, while we keep out of view the cashier's check, that the main purpose of the bank in making this promise to pay the $10,078.50, which Holdredge & Son owed to the supply company, was not to obtain an advantage for itself, that it derived no substantial benefit as a consideration therefor, and that the chief object of its promise was to insure the payment of the debt of Holdredge & Son. Its promise, therefore, fell under the statute of frauds, and in the absence of a writing subscribed by the bank it was not enforceable.

But on the same day that this promise was made the bank issued and delivered to the supply company its cashier's check for $5,870.74 in part payment of the debt of Holdredge & Son to the supply company. That check was the negotiable commercial paper of the bank. The pre-

sumption of validity and of a legal consideration for it arose from its face. What was there in the complaint to overcome this presumption? Counsel answer, the void parol agreement of guaranty in part performance of which the check was issued. But the agreement of guaranty and its performance were not forbidden by the moral or the civil law. That contract was unenforceable, because there was no legal evidence of its existence; but it was not evil in itself. And when the bank issued and subscribed its cashier's check, whereby it agreed to pay to the supply company $5,870.74 of that debt, it made a written contract, which was valid and enforceable under the statute of frauds to the amount there specified. Cold Blast Transportation Co. v. Kansas City Bolt & Nut Co., 114 Fed. 77, 81, 52 C. C. A. 25, 29, 57 L. R. A. 696.

But counsel contend that the execution and delivery of this check was ultra vires of the bank, because it was the guaranty of the debt of another. In the absence of an express grant of authority, and there is none in the charter of this bank (Rev. St. Wyo. 1899, § 3092), a guaranty, from which the bank derives no substantial benefit, of the performance of the obligation of another, in which it has no interest, is beyond the powers of such a corporation. Bowen v. Needles National Bank, 94 Fed. 925, 36 C. C. A. 553; Merchants' Bank of Valdosta v. Baird, 160 Fed. 642, 645, 90 C. C. A. 338, 341, 17 L. R. A. (N. S.) 526. Thus the mere guaranty, without benefit to the bank, of the payment of the debt of Holdredge & Son, was unquestionably beyond the authority of that corporation. But under the averments of the complaint the bank cashier's check is evidence of more than a guaranty.

The bank had unquestioned power to loan $5,870.74 to Holdredge & Son, and to take their promissory note or other like security for its repayment, and in consideration of such security to pay or to agree to pay the proceeds of that loan, or an equivalent amount, at the request of Holdredge & Son, to the supply company, in part payment of their debt to it. It is a practice of banks, too general to be ignored by the courts, to take such notes or security from borrowers before they credit them with the moneys so borrowed or assume obligations on account of them. There is nothing in the complaint in this case inconsistent with the presumption that this bank followed this practice in the case at bar, and obtained the commercial paper of Holdredge & Son, or other lawful security, for the repayment of the $5,870.74 and interest, before it made and delivered its check to the supply company. The check is prima facie valid. Concede that it was the duty of the bank and of its officers to obtain commercial paper or like security for the repayment of the $5,870.74 before it agreed to pay that amount to the supply company. Until the contrary is proved, the bank must be presumed to have done so; for the legal presumption is that corporations, officers, and men faithfully discharge the duties imposed upon them and act within their powers. Hughes County v. Livingston, 104 Fed. 306, 317, 43 C. C. A. 541, 552; Speer v. Board of County Commissioners, 32 C. C. A. 101, 109, 88 Fed. 749, 757.

Again, the bank had authority to issue the check in consideration of commercial paper or other adequate security taken by it, and where,

173 F.—55

under any circumstances, the execution of a promise or contract of a corporation may have been within its lawful powers, the presumption that it was so prevails until the contrary is established. City of Lincoln v. Sun Vapor S. L. Co., 59 Fed. 756, 760, 8 C. C. A. 253, 261; Grattan Township v. Chilton, 97 Fed. 145, 148, 38 C. C. A. 84, 87; City of Pierre v. Dunscomb, 106 Fed. 611, 616, 617, 45 C. C. A. 499, 504, 505; Hughes County v. Livingston, 104 Fed. 306, 311, 43 C. C. A. 541, 546; Independent School District v. Rew, 111 Fed. 1, 7, 49 C. C. A. 198, 204, 55 L. R. A. 364.

"Corporations are presumed to contract within their powers; and when a corporate contract is not on its face beyond the powers of the corporation making it, it will, in the absence of evidence to the contrary, be presumed to be valid." Choctaw, O. & G. R. Co. v. Bond, 87 C. C. A. 355, 360, 160 Fed. 403, 408; Railway Company v. McCarthy, 96 U. S. 258, 267, 24 L. Ed. 693.

The cases of Bowen v. Needles National Bank, 94 Fed. 925, 36 C. C. A. 553 and Merchants' Bank of Valdosta v. Baird, 160 Fed. 642, 90 C. C. A. 338, 17 L. R. A. (N. S.) 526, differ from the case of this check, in that the defendants in those cases had not obtained money or taken commercial paper or other lawful security for the obligations sued, and the plaintiffs had received constructive notice of that fact, and of the fact that the obligations evidenced mere guaranties of others' debts, while in the case in hand the legal presumption is that the defendant bank had obtained funds or taken adequate security for the repayment of the $5,870.74 before it issued its check. Hence its cashier's check evidenced, not a guaranty of another's debt, but an original contract of the bank made to serve its own interest in consideration of its receipt of the commercial paper of Holdredge & Son or other adequate security for the repayment of that amount and interest.

The conclusion is that the complaint stated a good cause of action upon the check of the bank, and that the judgment must be reversed, and the case must be remanded to the court below for further proceedings not inconsistent with the views expressed in this opinion.

It is so ordered.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes