## MINE & SMELTER SUPPLY CO. v. STOCK GROWERS' BANK.

(Circuit Court of Appeals, Eighth Circuit. October 21, 1912.)

### No. 3,641.

1. BANKS AND BANKING (§ 189*)—CASHIER'S CHECK—CONSIDERATION.

Checks of a contractor, employed to construct city waterworks, drawn on defendant bank, having been protested, the bank offered to pay plaintiff, from whom the contractor had purchased supplies, $5,870.71 in cash if plaintiff would wait for the balance until bonds of the city issued to pay for the waterworks, in the hands of the bank for sale, had been sold. A cashier's check for such sum was issued by defendant bank and delivered to plaintiff; but the bonds not having been sold, and the bank never having received anything therefor, payment was refused. Plaintiff's assistant secretary testified that there was no consideration for the cashier's check, except the bank's promise to pay the contractor's checks, and that he did not know of his own knowledge, except what certain correspondence showed, as to whether any of the materials which had been stopped in transit were released on the delivery of the check. *Held*, that the check was without consideration and unenforceable.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 729-732, 736; Dec. Dig. § 189.*]

2. BANKS AND BANKING (§ 227*)—CASHIER'S CHECK—ACTION—EVIDENCE.

In an action against a bank on a cashier's check, evidence of a prior telegram, sent by the bank to plaintiff, advising it of the payment of a draft for certain cement sold by plaintiff to the contractor, and promising to pay another during the current week, was immaterial.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 871-873; Dec. Dig. § 227.*]

In Error to the Circuit Court of the United States for the District of Wyoming; John A. Riner, Judge.

Action by the Mine & Smelter Supply Company against the Stock Growers' Bank. Judgment for defendant, and plaintiff brings error. Affirmed.

George S. Redd, of Denver, Colo., for plaintiff in error.
T. Blake Kennedy, of Cheyenne, Wyo., for defendant in error.

Before SANBORN and CARLAND, Circuit Judges, and W. H. MUNGER, District Judge.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

CARLAND, Circuit Judge. This case was here once before on demurrer to the complaint. Mine & Smelter Supply Co. v. Stock Growers' Bank, 173 Fed. 859, 98 C. C. A. 229. The case having been remanded for proceedings not inconsistent with the opinion of this court, it was moved for trial upon the second cause of action stated in the complaint. This cause of action declared upon a cashier's check executed and delivered to the supply company by the bank November 9, 1906, for the sum of $5,870.74. The answer of the bank admitted the execution and delivery of the check, but alleged that the issuance of said check was beyond the power of the cashier of the bank, and that the same was issued without consideration. For a second defense, the bank alleged that the plaintiff, on the 15th day of April, A. D. 1910, recovered a judgment against the town of Thermopolis, Wyo., in the District Court of the United States for the District of Wyoming, for the sum of $10,000, with costs, which judgment included the same items for which the cashier's check was given, and that to allow a recovery upon the cashier's check would represent a double payment. There was a replication by the supply company, admitting the recovery of the judgment alleged in the answer of the bank, but denying that a recovery upon the cashier's check would represent a double payment. The replication also denied that the cashier's check was issued without authority and that there was no consideration for the same.

A jury being waived, the case was tried to the court. Special findings of fact were made by the court in favor of the defendant, upon which judgment was rendered. Exception was taken to each of the special findings of fact, and the case is now here on writ of error.

The trial court found that the issuance and delivery of the cashier's check was entirely without consideration. If this finding of fact is sustained by the evidence, it disposes of the case; and we will first consider the assignment of error based upon this finding.

[1] The evidence introduced at the trial, so far as the consideration for the cashier's check is concerned, established the following facts: James W. Martin was cashier of the bank. Holdrege & Son had a contract with the town of Thermopolis to build a waterworks system. The town issued bonds in the sum of $30,000, which seemed to have been delivered to the bank to deliver to Holdrege & Son when the latter had given a good and sufficient bond for the performance of the contract of building the waterworks system. Martin testified as a witness that the cashier's check was issued by him November 9, 1906, with the belief that the bonds had been sold in Denver, Colo., and that on the next day the bank would receive the proceeds thereof; that the cashier's check was given to pay the unpaid and protested checks drawn by Holdrege & Son on the bank, in favor of the supply company. The sale of the bonds, however, failed, and they were subsequently adjudicated invalid by the courts, so that the bank never received any money whatever for the cashier's check.

Herbert E. Fiske, a witness for the supply company, and who was its assistant secretary in November, 1906, testified that there was nothing said about the sale of the bonds when Martin, the cashier,.

gave the cashier's check, and that the only thing he (Fiske) heard in reference to the matter was that the cashier's check was delivered to the supply company to carry out a proposition made by Martin in a letter dated October 13, 1906. Fiske also testified that there was no other consideration for the check than the promise of the bank to pay checks of Holdrege & Son, some of which had been protested, and others not cashed. It further appeared in evidence that the supply company was furnishing supplies to Holdrege & Son, and that in payment therefor Holdrege & Son drew checks upon the bank. After the bank had paid the checks of Holdrege & Son up to the sum of $1,800, it stopped paying such checks. The supply company thereupon took up the matter with the bank both by letter and telegram, and the bank in reply thereto wrote the following letter:

"Thermopolis, Wyo., Oct. 13, 1906.

"To the Mine & Smelter Supply Co., to H. S. Silverstein, Their Attorney: We have this proposition to make to you with reference to the amounts due to the Mine & Smelter Supply Company on account of supplies and materials furnished to Mr. Holdrege for the waterworks for the town of Thermopolis, and on account of outlays thereon, namely: If you will accept $5,870.74 in cash at once and wait for the balance of your bills until the bonds are sold, or else accept $5,000 of said bonds at par, as soon as injunction is dissolved, for the balance of your bills as now presented, and release all shipments of materials at once, then we will pay said $5,870.74 in cash at once, and the balance as soon as bonds are sold, or else, at your option, deliver $5,000 at par of the waterworks bonds as soon as injunction dissolved, in payment of the said balance.              The Stock Growers' Bank,

"By J. W. Martin, Cashier."

It will be observed that the sum of $5,870.74, mentioned in the letter, is the same sum for which the cashier's check was given. The check was given in Denver, Colo., by Martin, when he was there negotiating a sale of the bonds heretofore mentioned. The supply company deposited the check with the First National Bank at Denver, and that bank forwarded the same to the Stock Growers' Bank at Thermopolis for collection. The Stock Growers' Bank refused payment, and, as Martin testified, for the reason that the sale of the bonds had failed.

The evidence is undisputed that the bank never received any money consideration for the cashier's check. On the theory, however, that the cashier's check was given in pursuance of the offer made in the letter of October 13, 1906, above quoted, it remains to be seen whether the supply company suffered any detriment by reason of anything that it did in reliance upon the cashier's check. Fiske was the only witness who testified upon this matter, and his testimony is as follows:

"Q. Do you know what the Mine & Smelter Supply Company did after that [giving of the cashier's check] in regard to the shipment of goods—goods stopped in transit? A. I could not say absolutely, but I believe the correspondence will show that the shipments were released. Q. Do you know whether they had been tied up at that time pending this settlement, these shipments? A. Yes, sir. Q. What do you know about goods being delivered after that, Mr. Fiske? A. I know nothing of my own knowledge, except what the correspondence shows. Q. Well, what do you know about the shipment of goods—that is, the stopping of goods—being released after this check was

delivered to you? A. Well, I know that the Mine & Smelter Supply Company gave instructions relative to those shipments after this cashier's check was delivered to them."

This testimony is too uncertain and meager upon which to fix a liability on the bank of over $5,000, especially as Fiske also testified there was no consideration for the cashier's check, except the promise of the bank to pay the checks of Holdrege & Son. We think the trial court could not have found otherwise than that the cashier's check was issued and delivered without consideration, whether we accept the testimony of Martin as to the circumstances under which it was issued, or the testimony of Fiske, and the trial court had the right to believe either.

The admission by the trial court in evidence of the petition and judgment in the case of the Mine & Smelter Supply Company against the town of Thermopolis is assigned as error. There could be no error in this act of the court, because the pleadings admitted the rendition of the judgment, and the evidence showed that a part of the claims that were included in the amount for which the cashier's check was given were included in the amount for which the judgment was rendered. As we must sustain the judgment below by reason of the finding that there was no consideration for the issuance of the cashier's check, it becomes immaterial to inquire about the finding in reference to the petition and judgment in the case of the Mine & Smelter Company aganst the town of Thermopolis. The mere fact that judgment had been rendered in the case mentioned, and not collected, would not be a defense to the cashier's check in any event; but the whole matter becomes immaterial, in view of our conclusion upon the finding of the court as to failure of consideration.

[2] It is also assigned as error that the trial court excluded Exhibits G, H, and I, offered in evidence by the supply company. An examination of these exhibits demonstrates that they were in no way relevant to the question as to whether the bank had ever received any consideration for the cashier's check. Exhibit I was a telegram sent September 13, 1906, by the bank to the supply company and read as follows:

"Draft for cement paid. Other will be paid this week."

This was long before the cashier's check was given, and before the letter of October 13, 1906, had been written, and was a mere promise to pay, for which there appears to have been no consideration.

No error appearing in the record, we are of the opinion that the judgment must be affirmed; and it is so ordered.