## In re AMSDELL–KIRCHNER BREWING CO.

(District Court, N. D. New York. March 29, 1917.)

1. MORTGAGES ⬥277—ASSUMPTION BY PURCHASER.

A purchase of land subject to a mortgage creates no personal liability except a liability for purchase money to the vendor, hence a corporation which acquired land subject to a mortgage did not for that reason assume liability on the mortgage.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 726, 727.]

2. CORPORATIONS ⬥415—AGENTS—POWERS OF.

It is not within the power of a corporate officer to obligate the corporation to assume liability to discharge a mortgage on property acquired by the corporation subject thereto.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1664–1669.]

3. CORPORATIONS ⬥590(5)—CONSOLIDATION—CONTRACTS—VALIDITY.

One of the incorporators of a proposed corporation acquired land, executing a mortgage for a part of the purchase price. Thereafter the corporation acquired the property but entered into no contract to assume payment of the mortgage. The property subsequently passed to a second corporation with which the original company was consolidated. Claimants, second mortgagees, who on foreclosure acquired the first mortgage, the mortgagee having secured a deficiency judgment against the individual mortgagor, asserted that the consolidated company assumed payment of such mortgage. *Held* that, while an agreement by the consolidated company to pay a debt for which the original company was liable would have been an original undertaking which need not be written to be binding, yet, as the original company did not assume payment of the mortgage, or in any way bind or obligate itself to claimants, they cannot take advantage of any oral agreement between the original company and the consolidated company.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2366, 2367.]

4. BANKRUPTCY ⬥339—CLAIMS—ASSERTION.

Where a claim against a bankrupt corporation was based on the theory that it had assumed payment of a mortgage, claimant, it appearing that there had been no such assumption, cannot sustain his claim on another theory; there being no evidence to support such theory, and it being contrary to the allegations contained in the claim.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 525, 526.]

In Bankruptcy. In the matter of the bankruptcy of the Amsdell-Kirchner Brewing Company. Petition by Lona F. Crounse and another to review an order of Edwin A. King, Referee in Bankruptcy, disallowing their claim and expunging it from the record of claims. Order affirmed.

Visscher, Whalen & Austin, of Albany, N. Y., for claimants.
Muhlfelder & Illch, of Albany, N. Y., for trustee in bankruptcy.

RAY, District Judge. In 1906, Gustavus C. Sniper purchased from Dorothy Kirchner or the Kirchner estate a parcel of real estate in the city of Albany, N. Y., for the sum of $40,000, and took the deed in his own name. He paid $20,000 in cash, and gave back his personal bond for $20,000 for the balance of such purchase money, and exe-

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

cuted and delivered a mortgage on the property to secure the payment of such bond and interest. At that time, Mr. Sniper says he purchased the property for his own uses and purposes. Subsequently he sold and conveyed the property (then subject to the lien of the mortgage) to the Kirchner Brewing Company. At the time Mr. Sniper purchased this real estate, the said Kirchner Brewing Company had not been organized. The formation of such a corporation was then in mind, and Mr. Sniper purchased the property intending, if such corporation was formed, to turn it over to it if the corporation when formed saw fit or decided to take it. It was then contemplated by Sniper and others to form a corporation to be known as Kirchner Brewing Company. Sniper and the other persons who subsequently became incorporators of that company contributed or furnished the $20,000 paid in on the purchase of this property, and subsequently the company was formed and incorporated under that name, and Sniper became its president and remained such until such corporation was consolidated with the Amsdell-Kirchner Brewing Company, the now bankrupt. It is evident that Sniper contemplated that the property would be subsequently deeded to the corporation when formed. After the formation and incorporation of the Kirchner Brewing Company, Sniper deeded the property to the corporation. Sniper then told the incorporators that he had purchased this property for $40,000, $20,000 cash paid, and had given his bond secured by a mortgage on the property for the balance, $20,000. Each incorporator who had contributed to the said fund of $20,000 received stock in such corporation to the amount he had paid in. When the deed was given by Sniper to the Kirchner Brewing Company, the property was subject to the lien of the said mortgage, and Sniper was liable on his bond; but the corporation, the grantee, did not in its deed assume the payment of such bond and mortgage or either of them or of such debt. The corporation passed no resolutions then, or at any subsequent time, assuming or agreeing to assume or pay such bond or mortgage or the debt secured thereby. The Kirchner Brewing Company never in writing assumed or agreed to pay such bond or mortgage or the debt secured thereby.

Mr. Sniper testifies that, when he purchased the property and took the deed and paid in the money to the vendor, he was acting for himself alone individually; that the formation of a corporation was contemplated; that it was the understanding and agreement, when the money was paid in by those who contributed to the fund mentioned, $20,000, that they were to receive stock in the corporation when formed. There was no agreement, so far as appears, that there was to be any joint ownership in this property, or that this or any specific property was to be purchased. The following is an extract from Mr. Sniper's testimony:

By counsel for the claimants: "Q. Is it not a fact that at the time of the purchase of this property and the delivery of the mortgage in question you were acting as the representative of yourself and the other incorporators of the Kirchner Company? A. Only for myself when I first took the action. Q. At the time you purchased and paid the cash? A. At that time it was all settled, yes. Q. You were acting as the representative of all the incorporators?

A. I was acting as representative for myself.  Q. At the time of the payment of the price?  A. At that time I was buying the property for myself, but I had arranged to form a company.  Q. You, in acquiring this property, paid for it with a bond and mortgage and the cash of yourself and the other incorporators of the company?  A. Yes.  Q. And at that time you were acting for yourself and the other incorporators?  A. When I purchased it, I acted for myself alone.  Q. I am speaking of the time this (money) was paid over and the deed delivered.  A. No sir; I was acting for myself at that time.  Q. How is it that the other incorporators contributed a portion of their money if you were not acting for them?  A. They had subscribed for stock for a company to be formed and had paid their money in.  Q. So it was the company's money, then, this $20,000?  The Kirchner Brewing Company's money with your own?  A. No, it did not get to the company yet.  Q. They had subscribed and paid their money?  A. Yes.  Q. Money of the Kirchner Brewing Company to be organized?  A. Yes.  Q. And it was that money that purchased the property?  A. Yes."

[1] When the property was deeded over to the corporation thereafter, it knew of the mortgage, but each incorporator received his stock certificate, and hence had no interest in this real estate except such as the ownership of a stock certificate in the corporation would give.  When the corporation, Kirchner Brewing Company, accepted the deed, it, of course, expected to keep the property and pay off the mortgage, and such action on its part would have extinguished the liability of Mr. Sniper on the bond; but there was no assumption of the payment of the bond or mortgage or of the debt represented thereby.  It has been steadily held that the mere purchase of real estate subject to a mortgage given to secure the payment of a bond, or of a debt, does not make such purchaser personally liable for the bond or debt.  Such purchase of the real estate creates no personal liability except a liability for purchase money to the vendor.  The corporation mentioned could not contract prior to its organization and incorporation.  Thereafter it could not become liable for the indebtedness of the original purchaser on the bond unless it thereafter in some way assumed the debt.

Subsequent to all this, the Amsdell-Kirchner Brewing Company, a corporation, the now bankrupt, was formed and incorporated, and there was a consolidation of the two corporations.  Assuming that the now bankrupt corporation took over all the property and the debts and obligations of the Kirchner Brewing Company, how did it become liable for the debt secured by such bond and mortgage?

Later a suit upon the said bond and a foreclosure of the said mortgage was commenced and prosecuted by the then owner of the bond and mortgage against the said Amsdell-Kirchner Brewing Company and others, but no money judgment or judgment for deficiency was asked against such company.  There is no evidence of any such judgment or decree.  However, a judgment for $11,737.13 deficiency was obtained in that suit against Sniper.  It may be well to state that prior to such foreclosure the bond and mortgage became the property of Thomas Hurst, as committee of one George M. Lockwood, who commenced such foreclosure.  A Mr. Anglin was an officer of the bankrupt, and at his request Ada Frederick and Lona F. Crounse, who then owned a second mortgage on this property, became the owners of the bond and mortgage then in process of foreclosure and given

by Sniper as above stated. After such purchase by Ada Frederick and Lona F. Crounse, the foreclosure proceedings were held in abeyance for some considerable time, and the now bankrupt corporation paid to them the interest on such bond and mortgage. There is no evidence that the now bankrupt corporation ever assumed or agreed to pay such indebtedness represented by such bond, or the bond, or to become liable for any deficiency arising on such foreclosure proceedings unless the facts already stated constitute such assumption.

Mr. Loucks, who represents Frederick and Crounse, testifies:

That at the time they purchased the bond and mortgage, or shortly before, Mr. Anglin, who had been an officer of the company, told him Mr. Hurst had threatened the foreclosure of the mortgage. That "Kirchner Brewing Company at the time of the transfer or the consolidation (of the corporation) had agreed to assume that mortgage; that that was part of the consideration of the consolidation, and at different times, about a year and a half ago, I should say it was, he told me that they were prodding him on that mortgage and threatening foreclosure, and asked if our clients, Mrs. Crounse and Miss Frederick, would not take up the mortgage, that it was a first mortgage and was absolutely good, Miss Frederick and Mrs. Crounse at that time holding a second mortgage on the same property, and the first mortgage being a $20,000 mortgage, and the amount of the second mortgage being then $12,000 with accrued interest, and I told him that I would see Miss Frederick and Mrs. Crounse about it. Finally, Mr. Hurst, as the committee holding the mortgage, began a foreclosure action, and then Mr. Anglin came to me and asked if we would not take this over, that the Amsdell-Kirchner Company had assumed the payment of the mortgage, and that the Kirchner Brewing Company had promised the payment of it at the time it was delivered to Gustavus Sniper, the original mortgagor, who was, as I am informed, the principal stockholder of the Kirchner Brewing Company before the consolidation."

Assuming that Anglin made these representations to Mr. Loucks, although he denies such representations, there is no evidence that he had authority to make them or bind the now bankrupt corporation. He also testified:

"Mr. Sniper told me, at the time he sold the property, or the property was transferred by him to the Kirchner Brewing Company, that the Kirchner Brewing Company would agree to assume the obligation on the bond and mortgage."

Mr. Anglin says he had no definite conversation with Mr. Loucks, but that he "assumed" the corporation was liable on the bond and mortgage.

"I don't know if we were or not. I assumed we were. I never made any definite promises in regard to the matter, nor did I ever bring it up before the board of directors."

There is no evidence that the question of assuming the payment of this bond and mortgage, or of the debt represented thereby, was ever brought to the attention of the directors of either corporation or to the attention of the managing officers of either.

[2] The claim, so far as material, is as follows:

"That the said Amsdell-Kirchner Brewing Company, the person against whom a petition for adjudication of bankruptcy has been filed, was at and before the filing of said petition, and still is, justly and truly, indebted to this

deponent (meaning the claimants) in the sum of $11,737.13; that the consideration of said debt is as follows: Deficiency of judgment in mortgage against property of the defendant taken over from former mortgage by the claimant herein at the request of said bankrupt and on its promise to pay the same with interest."

Strictly speaking, this is not a claim based on any original liability of the Kirchner Brewing Company growing out of the purchase of the property by Sniper or any assumption of the debt by that company, or any assumption of that debt by the Amsdell-Kirchner Brewing Company on the consolidation, but one based on an alleged promise of the now bankrupt company to pay the deficiency arising on a foreclosure of the mortgage in consideration that the claimants, Lona F. Crounse and Ada Frederick, would purchase, take, and hold the said bond and mortgage. It is not a claim for damages for false or untrue representations. But from either standpoint I do not see how the claim can be sustained. It was not within the province or power of Anglin to assume in behalf of the corporation the payment of the debt, or any part of it, or of the deficiency if one arose, and, moreover, such an agreement on his part is not established by sufficient evidence. The evidence will not sustain a finding that either corporation ever assumed or agreed to pay the debt or any part of it, or any deficiency, if one arose, or that either corporation became liable because of its purchase of the property with this mortgage thereon outstanding and unpaid.

[3] The claimants' counsel asserts in his brief that they were not allowed to show that at the time of the consolidation the now bankrupt corporation assumed the payment of the bond and mortgage. The record and return does not sustain this contention. The claimants' counsel asked:

"Was it stated by Mr. Sniper to you, and to the other stockholders, or directors, that this property (that of Kirchner Brewing Company) would be turned over on the assumption by the Amsdell-Kirchner Company of the bond and mortgage, or liability under it? * * * I ask if it was stated at that time."

This was objected to, and the referee sustained the objection, saying, "Unless it can be made to appear that that statement took the form of writing." The attorney for the claimants then pursued his inquiry as to writings, and then asked this question and received this answer without objection:

"Q. Was there anything said then, or at any other time, about the assumption of the bond and mortgage given by Mr. Sniper? A. No, the question never came up."

But suppose the now bankrupt corporation at the time of the consolidation had agreed orally with the Kirchner Brewing Company to assume the payment of the bond (the debt of Sniper), and mortgage, how could the oral agreement inure to the benefit of these claimants or sustain their claim as made and presented? A mere promise of one person to pay the debt of a third person does not necessarily inure to the benefit of the promisee of such third person. There was

no liability to Sniper or to these claimants on the part of the Kirchner Brewing Company, and it is not claimed that Sniper or the then holder of the bond and mortgage was a party to such agreement if made. Sniper owed the amount of the bond and the debt represented thereby to the holder thereof. The Kirchner-Brewing Company had not assumed it or agreed to pay it, and I do not see that the then holders of it or their assignees can avail themselves of any mere verbal promise made by the Amsdell-Kirchner Brewing Company made to the Kirchner Brewing Company to pay that debt. If the consolidated corporation then received property from the Kirchner Brewing Company, and so became indebted to it therefor, and the Kirchner Brewing Company was then obligated to the holder of the bond and mortgage, that is, was liable to such holder for the amount thereof, or for any part thereof, and in consideration of such transfer of property to it the consolidated corporation, now the bankrupt, promised to pay the obligation owing by such promisee, Kirchner Brewing Company, or the debt for which it was liable, it was an original undertaking, and no writing was necessary, and perhaps the holder of the bond and mortgage could avail itself of such promise. See Davis v. Patrick, 141 U. S. 479, 487, 488, 12 Sup. Ct. 58, 35 L. Ed. 826; Emerson v. Slater, 22 How. (U. S.) 28, 37, 38, 43, 44, 16 L. Ed. 360; Mallory v. Gillitt, 21 N. Y. 412, 423, 433; Justice v. Tallman, 86 Pa. 147; Fosha v. O'Donnell, 120 Wis. 336, 97 N. W. 924; Mine & Smelter Supply Co. v. Stockgrowers' Bank, 173 Fed. 859, 862, 863, 98 C. C. A. 229.

The difficulty is that, unless the Kirchner Brewing Company was liable, it had no interest in the payment of the debt; and, secondly, the agreement of the now bankrupt to pay such debt is not established by evidence. Such an agreement cannot be established by proving the oral statements made by Anglin and Sniper. But, even if it could be, their statements as sworn to do not come up to the mark of proving such an agreement by the corporation.

[4] It is urged that the deficiency judgment arose in part, if not mainly, by reason of the accrual of water rents while the property was in the possession of and used by the now bankrupt. There is equity in this contention, but the trouble is a claim was not presented based on such facts, and no such claim was litigated even indirectly, and there was no request to amend. If the now bankrupt corporation incurred indebtedness for water rents and was liable therefor, I do not see why it is not still liable. If claimants should purchase such claim, it could present it in this court. But I find no evidence in the record bearing on this question.

I think the order of the referee must be affirmed, and it is so ordered.